UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re:                                                                    Case No. 14-CV-1166 (SJF)

                                                                          Bankruptcy Case
                                                                          No. 104-85727-CEC

LYNN CAROL SCHNEIDER,

                Debtor.

-----------------------------------------------------------------x


**BRIEF OF APPELLEE R. KENNETH BARNARD, CHAPTER 7 TRUSTEE OF THE
ESTATE OF LYNN CAROL SCHNEIDER IN OPPOSITION TO THE APPEAL OF
LYNN CAROL SCHNEIDER FROM THE DECEMBER 23, 2013 ORDER OF
THE BANKRUPTCY COURT APPROVING A SETTLEMENT OF
<u>THE EMPLOYMENT DISCRIMINATION CLAIM HELD BY THE ESTATE</u>**


**LaMonica Herbst & Maniscalco, LLP**
3305 Jerusalem Avenue
Wantagh, New York 11793
Tel. (516) 826-6500
*Attorneys for R. Kenneth Barnard, Esq., the*
*Chapter 7 Trustee of Lynn Carol Schneider*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................ iii

PRELIMINARY STATEMENT ........................................................... 1

STATEMENT OF THE ISSUE ........................................................... 2

STANDARD OF REVIEW ................................................................. 2

STATEMENT OF THE CASE ............................................................. 2

STATEMENT OF THE FACTS ........................................................... 3

    A.        The Debtor's Prepetition Claim for Employment Discrimination .............. 3

    B.        The Debtor's Chapter 7 Bankruptcy Filing ............................... 4

    C.        The 2008 Settlement .......................................................... 4

    D.        Mason's Engagement as Special Counsel and
                the Intervening Proceedings ..................................................... 5

    E.        The 2013 Settlement .......................................................... 7

SUMMARY OF THE ARGUMENT ...................................................... 13

ARGUMENT ................................................................................ 14

    A.        The Bankruptcy Court Applied the Correct Standard .............................. 14

    B.        The Bankruptcy Court Conducted a Proper Hearing ............................. 15

    C.        The Bankruptcy Court Made Appropriate Findings in Approving the 2013
                Settlement ....................................................................... 16

    D.        The Record Supports the Bankruptcy Court's Approval of the
                2013 Settlement……………………………………………………… 17

    E.        The Bankruptcy Court Correctly Applied
                the *TMT Trailer Ferry* Factors ................................................. 19

CONCLUSION ................................................................................ 24

**TABLE OF AUTHORITIES**

**Cases**

*Cosoff v. Rodman,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983) ........................... 14

*In re Adelphia Communications Corp.,* 327 B.R. 143, 158 (Bankr.S.D.N.Y. 2005) .................................................................................. 14, 15, 16, 20

*In re Ashford Hotels,* 226 B.R. 797, 802 (Bankr.S.D.N.Y. 1998) ............................ 15, 16

*In re Dana Corp.*, 412 B.R. 53, 57 (S.D.N.Y. 2008) ........................................................ 2

*In re Delta Air Lines, Inc.*, 374 B.R. 516, 522 (S.D.N.Y. 2007) ........................................ 2

*In re Hibbard Brown & Co.,* 217 B.R. 41, 45 (Bankr.S.D.N.Y. 1998) ........................... 14

*In re Iridium Operating LLC,* 478 F.3d 452, 461 n.13 (2d Cir. 2007) ............. 2, 14, 16, 20

*In re Purofied Down Prods.,* 150 B.R. 519, 522 (S.D.N.Y. 1993) ................................... 14

*In re Spielfogel,* 211 B.R. 133, 143 (Bankr.E.D.N.Y. 1997) ........................................... 15

*In re Telcar Group, Inc.*, 363 B.R. 345, 352 (E.D.N.Y. 2007) ........................................ 16

*In re Texaco, Inc.,* 84 B.R. 893 (Bankr. S.D.N.Y. 1988) .................................................. 15

*In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) ........................................ 2, 14, 24

*Kayo v. Fitzgerald,* 91 Fed.Appx. 714, 716 (2d Cir. 2004) ....................................... 15, 16

*Motorola, Inc.v. Official Comm. of Unsecured Creditors,* No. 01 Civ. 5429, 2005 WL 756900, at *6 (S.D.N.Y. April 4, 2005) .................................................................................. 20

*Official Comm. of Unsecured Creditors of Int'l Distribution Ctrs. Inc. v. James Talcott, Inc. (In re Int'l Distribution Ctrs.),* 103 B.R. 420, 423 (S.D.N.Y. 1989) ............................... 14

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, 88 S.Ct. 1157, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968) ...... 8, 13,15, 16, 17, 19, 20, 24

*SEC v. Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992) ................................................................... 2, 14, 15, 16

**Statutes**

Fed.R.Bankr. P. 9019 ..................................................................................... 1, 4, 14, 16, 25

## PRELIMINARY STATEMENT

R. Kenneth Barnard (the "Trustee"), the Chapter 7 Trustee of the estate of Lynn Carol Schneider (the "Debtor"), respectfully submits this brief in opposition to the appeal of the Debtor from the order of the United States Bankruptcy Court for the Eastern District of New York dated December 23, 2013 (the "2013 Order") approving, pursuant to Bankruptcy Rule 9019, the settlement (the "2013 Settlement") among the Trustee, Long Island Forum for Technology ("LIFT") and Richard Cordani ("Cordani").

The 2013 Order was not an abuse of the bankruptcy court's discretion and it should be affirmed.  The bankruptcy court evaluated the reasonableness of the 2013 Settlement and concluded that the bankruptcy estate was to receive adequate consideration in exchange for the 2013 Settlement of the claim held by the estate against LIFT and Cordani.  In doing so, the bankruptcy court was cognizant of its prior rejection of a settlement proposed by the Trustee in 2008, the reasons why it rejected that settlement and why it believed the 2013 Settlement to be appropriate.

While general unsecured creditors had notice of the Trustee's motion seeking Court approval of the 2013 Settlement, none objected to the 2013 Settlement.  The Trustee's special counsel and the purported largest creditor of this estate, Elizabeth Mason, Esq. ("Mason"), and the Debtor, who failed to disclose her employment discrimination claim in her petition, schedules and statement of financial affairs or at the Section 341 meeting of creditors, objected. Those objections were overruled and the 2013 Settlement was approved, resulting in this appeal by the Debtor.

While the Debtor appealed, it is evident that the Debtor's brief was not prepared *pro se* but instead most likely ghost written by Mason, who has allowed her pecuniary interest in the outcome of these proceedings to interfere with her obligations to the Trustee as his special counsel.

## STATEMENT OF THE ISSUE

Did the bankruptcy court abuse its discretion in determining that the 2013 Settlement rose above the lowest point in the range of reasonableness?

## STANDARD OF REVIEW

This Court reviews the bankruptcy court's finding that the 2013 Settlement is reasonable for an abuse of discretion.  *In re Iridium Operating LLC,* 478 F.3d 452, 461 n.13 (2d Cir. 2007); *In re Dana Corp.*, 412 B.R. 53, 57 (S.D.N.Y. 2008); s*ee also SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lampert Group)*, 960 F.2d 285, 293 (2d Cir. 1992).  "The bankruptcy court will have abused its discretion if 'no reasonable [person] could agree with the decision' to approve the settlement." *In re Delta Air Lines, Inc.*, 374 B.R. 516, 522 (S.D.N.Y. 2007).  Indeed, the Court's task is "to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (*citation omitted*).

## STATEMENT OF THE CASE

On November 8, 2013, the Trustee moved in the bankruptcy court for approval of the 2013 Settlement with LIFT and Cordani, which settlement provides, among other things, for the payment of $300,000.00 to the Debtor's estate in satisfaction of prepetition employment discrimination claim asserted by the Debtor against LIFT and Cordani.  [Bankr. Dkt. No. 94][1]

---

[1] For purposes of consistency between the Appellant and Appellee's Briefs, the Trustee has referenced the docket in the bankruptcy case.

Mason, in her capacity as a purported secured and administrative creditor of the Debtor's estate, interposed an objection to the 2013 Settlement [Bankr. Dkt. Nos. 96 and 98] and filed an objection purporting to be prepared by the Debtor *pro se*.  [Bankr. Dkt. No. 99]

A hearing on the Trustee's motion seeking bankruptcy court approval of the 2013 Settlement was held on December 10, 2013 (the "Hearing").  The Trustee, his counsel, bankruptcy counsel and employment counsel to LIFT and Cordani, the Debtor, Mason, a representative of the Office of the United States Trustee, and a representative of LIFT appeared at the hearing and were heard by the bankruptcy court.  [Bankr. Dkt. No. 103]

Over the objections of Mason and the Debtor, the bankruptcy court approved the 2013 Settlement and directed that the Trustee settle an order approving the 2013 Settlement.  [Bankr. Dkt. No. 103]

As directed, the Trustee filed and served a notice of settlement of a proposed order approving the 2013 Settlement.  [Bankr. Dkt. No. 101]  Both the Debtor and Mason filed objections to the proposed order.  [Bankr. Dkt. Nos. 104 and 106].  The bankruptcy court overruled those objections and granted the 2013 Order approving the 2013 Settlement.  [Bankr. Dkt. No. 108]

## STATEMENT OF FACTS

A.  *The Debtor's Prepetition Claim for Employment Discrimination*

On or about March 19, 1997, the Debtor filed a verified complaint with the New York State Division of Human Rights (the "Division") charging LIFT, Cordani and Walter Mickle, as aiders and abettors, with an unlawful discriminatory practice relating to employment in violation of the Human Rights Law of the State of New York (the "Claim").  [Bankr. Dkt. No. 99, Exhibit B]

Those proceedings resulted in the Commissioner of the Division issuing an order on April 26, 2007 finding for the Debtor and against LIFT and Cordani, and awarding the Debtor damages comprised of $252,399.99 in back pay, $20,720.64 for lost benefits, and $75,000.00 for mental anguish (the "2007 Determination").  [Bankr. Dkt. No. 99, Exhibit B]

### B.  The Debtor's Chapter 7 Bankruptcy Filing

While the proceedings before the Division were pending, on September 8, 2004 the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  [Bankr. Dkt. No. 1]  The Debtor did not disclose the Claim on her petition, schedules or statement of financial affairs.  [Bankr. Dkt. No. 1]  The Debtor did not disclose the Claim when examined by the Trustee at the Section 341 meeting of creditors.  These failures were referenced in the record of the Hearing and acknowledged by the Debtor.  [Bankr. Dkt. No. 103, 6:23-7:3, 22:12-23:11]

The Debtor was granted her discharge on January 3, 2005.  [Bankr. Dkt. No. 5]  The Debtor's bankruptcy case was then closed.  Subsequent to the granting of the discharge and the bankruptcy case being closed, the 2007 Determination was made in the Debtor's favor.

Upon learning of the pendency of the proceedings before the Division and the Debtor's failure to disclose the same, the Trustee moved to reopen the Debtor's bankruptcy case to administer the Claim.  That motion was granted by order entered on November 29, 2007. [Bankr. Dkt. No. 9]

### C.  The 2008 Settlement

Subsequent to the reopening of the Debtor's bankruptcy case, the Trustee entered into discussions with LIFT and Cordani concerning the settlement of the Claim.  A settlement was reached and memorialized, which provided for a $150,000.00 payment to the bankruptcy estate (the "2008 Settlement").  By motion dated March 28, 2008, the Trustee sought to compromise

the 2007 Determination through a proposed settlement with LIFT and Cordani.  [Bankr. Dkt. No. 22]  Both the Debtor and Mason opposed that motion.  [Bankr. Dkt. Nos. 26, 29, 34, 35 and 37] The Trustee filed a reply [Bankr. Dkt. No. 30] and LIFT and Cordani filed papers supporting the Trustee's motion.  [Bankr. Dkt. Nos. 32, 33 and 36]

Concerned about the benefit that the Debtor might derive from the 2008 Settlement and unsatisfied that the downside to the Debtor's estate arising from cost, expense and delay of the adjudication of the 2007 Determination was then a sufficient basis to approve the 2008 Settlement, the bankruptcy court denied that motion.  [Bankr. Dkt. No. 89]  Following the hearing on that motion held on June 12, 2008, the bankruptcy court entered an order on August 1, 2008 denying the Trustee's motion. [Bankr. Dkt. No. 55]

D.  *Mason's Engagement as Special Counsel and the Intervening Proceedings*

On April 22, 2009, the Trustee retained Mason to act as his special counsel to prosecute the appeal of the 2007 Determination and an application seeking Mason's engagement as special counsel to the Trustee was filed on April 28, 2009. [Bankr. Dkt. No. 80] That application was approved on May 6, 2009.  [Bankr. Dkt. No. 81]  Thereafter, Mason ceased to be counsel to the Debtor and owed a contractual and fiduciary duty to the Trustee as her client.

Mason, on behalf of the Trustee, moved to substitute the Trustee as the party in interest in the place of the Debtor before the Division.  In or about April 2012, the Division issued a final order awarding damages against LIFT and Cordani in the sums stated in the 2007 Determination and granted the substitution of the Trustee (the "2012 Determination").  [Bankr. Dkt. No. 96, Exhibit B]

In or about April 2012, LIFT and Cordani filed a notice of petition and petition seeking to annul the 2012 Determination of the Division.  In or about May 2012, Mason, on behalf of the Trustee, interposed an answer to that petition.  [Bankr. Dkt. No. 94, p. 8]

By Order dated September 4, 2012, upon consent of the parties, the cross-petition to transfer the matter to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department (the "Second Department") for disposition, pursuant to New York Executive Law Section 298 and 22 N.Y.C.R.R. 202.57, was granted.  [Bankr. Dkt. No. 94, p. 7]

Thereafter, the Trustee, LIFT and Cordani agreed to extend the time for the perfection of the matters before the Second Department pending their settlement discussions.  As the time to perfect was to expire without the Second Department having approved a further extension of the time to perfect, on or about September 3, 2013 LIFT and Cordani served their brief (the "Brief"). [Bankr. Dkt. No. 94, p. 7]

Both before the bankruptcy court and the Second Department, LIFT and Cordani have claimed that the Division lacked subject matter jurisdiction over the Claim and that the Debtor was estopped from pursuing the Claim as a result of her intervening bankruptcy case and failure to disclose the claim as an asset.  [Bankr. Dkt. No. 94, p. 7]

LIFT and Cordani addressed these arguments in the first and second points of the Brief and contend that as the Trustee's interests in property are no greater than the Debtor, a bar of the Debtor's ability to pursue the Claim should act as estoppel from the Trustee pursuing the Claim. [Bankr. Dkt. No. 94, pp. 7-8]  In the Brief, LIFT and Cordani have presented thirteen questions to the Second Department, including, but not limited to:

- Did the Division err as a matter of law when it found it had jurisdiction over the Claim, and authority to continue the hearing, and issue its final order, after the date of the Debtor's petition;

- Did the Division err as a matter of law when it found the Debtor and the Trustee possessed standing to pursue the Claim;

- Did the Division err as a matter of law when it failed to find that the Debtor and the Trustee were judicially estopped and barred by laches from pursuing the Claim;

- Did the Division err as a matter of law in allowing the Trustee to reopen the proceeding, as such reopening violated the Division's rules of practice;

- Did the Division err as a matter of law in accepting the Trustee's *ex post facto* motion to substitute for the Debtor in the Discrimination Action.

[Bankr. Dkt. 94, p. 8]

### E. *The 2013 Settlement*

Five years after the Court denied the 2008 Settlement, LIFT and Cordani renewed settlement discussions with the Trustee. Those discussions resulted in the parties reaching a settlement in the sum of $300,000.00 (the "Settlement Sum"), twice the 2008 Settlement. [Bankr. Dkt. No. 94, Exhibit A] The 2013 Settlement provides for an initial payment of $75,000.00 and quarterly payments of $28,125.00, the latter of which commenced in January 2014. *Id.*

On November 8, 2013, the Trustee moved in the bankruptcy court for approval of the 2013 Settlement. [Bankr. Dkt. No. 94] In his motion, the Trustee identified several grounds for the exercise of his business judgment in advancing the 2013 Settlement. These grounds included, but were not limited to, the likelihood of success on the merits in confirming the 2007 and 2012 Determinations, the collectability of any judgment ultimately affirmed by the Second Department, and the prospective distribution to creditors arising from the Settlement Sum. [Bankr. Dkt. No. 94, p. 14] The Trustee was particularly concerned with the question of how judicial estoppel might be applied to the present circumstances, the prospective surplus to the

Debtor, and the collectability of any judgment that might be awarded to the Trustee on account of the 2007 and 2012 Determinations.  [Bankr. Dkt. No. 94, pp. 14-21]

Ahead of the filing of that motion, by letter dated October 4, 2013, the Division advised the Trustee that it did not object to the terms of the 2013 Settlement.  [Bankr. Dkt. No. 94, p. 3]  No general unsecured creditors, all of whom had notice of the Trustee's motion and an opportunity to be heard, opposed the 2013 Settlement.

Mason, in her capacity as a purported secured and administrative creditor of the Debtor's estate interposed an objection to the 2013 Settlement [Bankr. Dkt. Nos. 96 and 98] and filed an objection purporting to be prepared by the Debtor *pro se*.  [Bankr. Dkt. No. 99]

In her objection, Mason claimed that she was the estate's largest creditor, as the purported holder of a secured claim valued at $234,000.00 and an administrative claim of $70,000.00, the latter on account of fees accrued by her since her engagement by the Trustee in 2009.  [Bankr. Dkt. Nos. 96 and 98]  Mason complained that the 2013 Settlement would wrongfully compromise her claims as a creditor, harm the unsecured creditors and injure the Debtor.  As part of her objection, Mason prepared a damage calculation, annexed as Exhibit A to her objection, in which she concluded that the award had a value of approximately $700,000.00, inclusive of interest measured from December 22, 2001.  Predicated on that calculation, Mason determined her secured claim to be $234,184.25, i.e. one-third of her damage calculation, plus certain out of pocket expenses.  In the objection Mason addressed the seven factors identified in *TMT Trailer Ferry Protective Comm. v. Anderson*, 390 U.S. 414 (1968), which factors shall be addressed by the Trustee below.

In opposition to the 2013 Settlement, the Debtor claimed, among other things, that the 2013 Settlement represented less than one-half of the value of the award made by the Division on

the Claim, that there is a likelihood of a substantially greater recovery if the Claim is pursued, that she was confident the award would not be vacated on appeal, that the Office of the United States Trustee had been impressed by the findings in favor of the Debtor by the Division in opposing the 2008 Settlement, that the award could be collected against LIFT based on its 2011 reported revenue, and that Mason's allegedly secured statutory lien would leave less than $66,000.00 with which the Trustee could pay the administrative expenses of the estate, the general unsecured creditors and a distribution to the Debtor. [Bankr. Dkt. No. 99] It is no coincidence that in opposition to the 2013 Settlement the Debtor annexed the same Exhibits A, B and C to her objection as those annexed to Mason's objection as Exhibits A, B and D, respectively.

At the 2013 Hearing, Mason and the Debtor reiterated the positions asserted in their objections. Mason placed great emphasis on her pecuniary interest in the outcome of the litigation over the Claim in noting that she was "resting her entire fee on the successfulness of . . . obtaining the enforcement of the award on appeal", "would be in the best position to make the assessment of the merits of this decision" as the "only secured creditor that has anything to risk" and that she has "everything to win if [the bankruptcy court] were to reject [the 2013 Settlement]." [Bankr. Dkt. No. 103, 15:18-15:25] The bankruptcy court observed that Mason appeared to be arguing on behalf of her claim, that it was evident Mason wanted to protect her fees and that the matter of Mason's fees was not then before the bankruptcy court. [Bankr. Dkt. No. 103, 17:7-17:8, 18:5-18:22, 35:4-35:6]

Mason further opined about her confidence that the award would be upheld on appeal and characterized the Trustee's position on collectability as "vacuous". [Bankr. Dkt. No. 103, 20:6-

20:17]  In support of that contention, Mason had annexed excerpts of LIFT tax returns for tax years 2006 through 2011 as Exhibit L to her objection.  [Bankr. Dkt. No. 96, Exhibit L]

The excerpts of LIFT's tax returns reflect the following at the year-end:

| Tax Year | Net Assets or Fund Balances |
|----------|----------------------------|
| 2006 | 299,349 |
| 2007 | 406,985 |
| 2008 | 426,494 |
| 2009 | 274,961 |
| 2010 | 98,167 |
| 2011 | 150,432 |

[Bankr. Dkt. No. 96, Exhibit L]  In her objection and at the Hearing, Mason focused on the gross revenue of LIFT in these tax years.  [Bankr. Dkt. 103, 20:13-20:17, 51:23-51:24]  The bankruptcy court observed that according to these tax returns LIFT had little revenue net of expenses.  [Bankr. Dkt. No. 103, 20:21-20:23, 51:25]  Mason replied that since interest was accruing and a judgment could be enforced for 20 years, LIFT had every incentive to pay the award.  [Bankr. Dkt. No. 103, 20:10-20:20]

Both the Trustee and counsel for LIFT and Cordani expressed surprise that Mason claimed to have incurred a $70,000.00 administrative claim since being retained by the Trustee in 2009 given that the proceedings in the Second Department had been in a "pens down" status in view of settlement discussions renewed early in 2013.  [Bankr. Dkt. No. 103, 9:3-9:10, 10:15-10:22, 24:22-25:18]  As of the date of the Hearing, the Trustee had not seen an invoice or bill reflecting the time and expenses incurred by Mason on behalf of the Trustee.  [Bankr. Dkt. No. 103, 9:3-9:10]  In fact, during this period, Mason ignored the express directions of her client, the Trustee, to extend the deadline for LIFT and Cordani to serve their brief in view of the settlement discussions between the parties.  [Bankr. Dkt. No. 103, 24:25-25:10]

Both the Trustee and counsel for LIFT and Cordani observed that Mason's allegedly secured claim was not one-third of her calculation of the damage award, inclusive of interest, but instead a contingency fee of 33.33% "of any and all sums recovered as a result of trial or by way of settlement after a lawsuit has been instituted" and that her fee should be computed based on the total recovery, whether by settlement or judgment.  [Bankr. Dkt. No. 103, 10:5-10:14, 24:16-24:21; Bankr. Dkt. No. 96, Exhibit C]

As to the financial condition of LIFT, as noted in the Trustee's motion [Bankr. Dkt. No. 94, pp. 18-19], LIFT is a not-for-profit enterprise funded by either "donations or grants that come from government agencies that are … called restrictive grants", meaning grants must be used for a specific purpose, not for the payment of operating expenses and liabilities.  [Bankr. Dkt. No. 103, 27:5-27:21]  As of the date of the Hearing, LIFT only had $75,000.00 in its account, an extremely inadequate sum with which to satisfy a $700,000.00 award.  *Id.*  The limitations inherent in LIFT's financial condition are reflected in the terms of the 2013 Settlement, which provides for the Settlement Sum to be paid in installment payments over a two year period. [Bankr. Dkt. No. 94, Exhibit A; Bankr. Dkt. No. 103, 28:18-28:23]

At the Hearing, employment counsel for LIFT and Cordani identified several grounds why the 2007 and 2012 Determinations should be completely vacated or reduced by as much as half.  [Bankr. Dkt. No. 103, 29:18-34:21]  These grounds included, but were not limited to, the failure of the Debtor to mitigate her damages reducing the back pay component of the award, the overstatement of the interest calculations, the windfall to the Debtor should the award accrue nine percent interest on the Claim she knowingly failed to disclose in her bankruptcy filing, and the lack of medical evidence supporting the emotional distress damages.  *Id.*

The Trustee directly addressed the bankruptcy court.  In his remarks, the Trustee advised that the bankruptcy case had been pending for ten years, he had a fiduciary duty to the creditors to present a substantial settlement offer, significant risk lay ahead before the Second Department in view of the challenges being made to the 2007 and 2012 Determinations, and that were the proceedings before the Second Department to continue until exhausted a lesser net recovery might result and the distribution to creditors of the estate might be delayed for years.  [Bankr. Dkt. No. 103, 40:1-42:4]  On the latter point, counsel for LIFT and Cordani noted that it could be two years before a decision is rendered by the Second Department on the 2007 and 2012 Determinations, without consideration of the additional delay attendant with a remand or reversal and further appeal.  [Bankr. Dkt. No. 103, 44:11-44:19]

The Office of the United States Trustee, which opposed the 2008 Settlement, observed that the 2013 Settlement was twice that of the 2008 Settlement and that the merits of the 2007 and 2012 Determinations were still on appeal.  In concluding that the 2013 Settlement appeared to be a sound exercise of the Trustee's business judgment, the Office of the United States Trustee noted the risk inherent in any appeal, particularly here where the 2007 and 2012 Determinations could be overturned or reduced, and the collectability concerns raised by the Trustee.  [Bankr. Dkt. No. 103, 47:7-49:24]

Following argument, the bankruptcy court concluded:

[W]hat is before the Court is only a determination to be made as to whether this is at the lowest level of reasonableness in the compromise. I'm -- it's the same standard I used before when I didn't think it was appropriate. But in this case, I do. I believe that there is an inherent risk in the appeal. There is a risk that there will be very little to compensate the trustee in this case on behalf of the debtor. There is substantial delay ahead which diminishes any recovery to anyone until it is ultimately decided. There is no evidence that it is fully collectible if it were to be obtained. And most important, I have to give credit to a trustee's business judgment after reviewing all of the issues placed before him. And, therefore, I must determine that the trustee's motion should be granted.

[Bankr. Dkt. No. 103, 52:14-53:2]

## SUMMARY OF THE ARGUMENT

The bankruptcy court made a considered independent judgment that the 2013 Settlement, when viewed against the risk of vacatur or reduction of the 2007 and 2012 Determinations, delay in the final adjudication of those proceedings, and the collectability of any final judgment, is fair and in the best interests of the bankruptcy estate. The bankruptcy court carefully analyzed the benefits of the 2013 Settlement to the Debtor's estate and was satisfied that the concerns it and the Office of the United States Trustee had concerning the 2008 Settlement were adequately addressed in connection with the 2013 Settlement.

On appeal, the brief submitted under the Debtor's name raised four primary arguments why the bankruptcy court's approval of the 2013 Settlement should be overturned.  First, the Debtor claims that the bankruptcy court failed to conduct a proper hearing.  Second, the Debtor claims that the bankruptcy court abused its discretion by failing to set forth its findings of fact and conclusions of law in approving the 2013 Settlement and entering the 2013 Order.  Third, the Debtor argues that the 2013 Settlement was lacking in factual and legal support.  Fourth, the Debtor contends that the bankruptcy court abused its discretion in failing to apply the factors identified in *TMT Trailer Ferry Protective Comm. v. Anderson*, 390 U.S. 414 (1968) and its progeny.  Some of these grounds were not identified in the Debtor's designation of issues on appeal and are not properly before this Court on appeal.

For the reasons stated below, each of these grounds should be overruled and the approval of the 2013 Settlement affirmed on appeal.

**ARGUMENT**

**THE 2013 ORDER SHOULD BE AFFIRMED**

**A.     The Bankruptcy Court Applied the Correct Standard**

A bankruptcy court's determination as to the reasonableness of a settlement is subject to *de novo* review. *Iridium*, 478 F.3d at 461 n.10.  Here, the bankruptcy court correctly applied the factors set forth in *In re Iridium*.  Accordingly, this Court reviews for abuse of discretion the reasonableness of the bankruptcy court's approval of the 2013 Settlement. *Id*.; *Drexel*, 960 F.2d at 293.

A bankruptcy court may approve a compromise and settlement if it is fair, reasonable and adequately based on the facts and circumstances before the court. Fed. R. Bankr.P. 9019; *Drexel,* 960 F.2d at 292-93 (2d Cir.1992); *In re Hibbard Brown & Co.,* 217 B.R. 41, 45 (Bankr.S.D.N.Y. 1998). "The legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate." *In re Adelphia Communications Corp.,* 327 B.R. 143, 158 (Bankr.S.D.N.Y.2005) (internal quotation marks omitted). The bankruptcy court's responsibility is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant*, 699 F.2d 599, 608 (2d Cir. 1983), *cert, denied sub nom*; *Cosoff v. Rodman,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *Adelphia,* 327 B.R. at 159.

The bankruptcy court may give weight to the trustee's opinion that the settlement is fair and equitable. *Adelphia,* 327 at 159; *In re Purofied Down Prods.,* 150 B.R. 519, 522 (S.D.N.Y.1993); *Official Comm. of Unsecured Creditors of Int'l Distribution Ctrs. Inc. v. James Talcott, Inc. (In re Int'l Distribution Ctrs.*), 103 B.R. 420, 423 (S.D.N.Y.1989). It is not necessary for the bankruptcy court to rule on disputed issues of fact and law or to conduct a

"mini trial" on the merits of the underlying litigation. *Adelphia,* 327 B.R. at 159; *In re Ashford Hotels,* 226 B.R. 797, 802 (Bankr.S.D.N.Y.1998). At the same time, a bankruptcy court may not simply defer to a trustee's judgment, but must independently evaluate the reasonableness of the settlement. *TMT Trailer Ferry, Inc.,* 390 U.S. at 424; *Kayo v. Fitzgerald,* 91 Fed.Appx. 714, 716 (2d Cir. 2004); *Adelphia,* 327 B.R. at 159;  *Drexel,* 134 B.R. at 496 .

A bankruptcy court will consider the following factors to decide whether a settlement falls above or below the lowest point in the range of reasonableness:

a) The balance between the likelihood of success compared to the present and future benefits offered by the settlement;

b) The prospect of complex and protracted litigation if [the] settlement is not approved;

c) The proportion of class members who do not object or who affirmatively support the proposed settlement;

d) The competency and experience of counsel who support the proposed settlement;

e) The relative benefits to be received by individuals or groups within the class;

f) The nature and breadth of any releases to be issued as a result of the proposed settlement; and

g) The extent to which the settlement is the product of arm's length bargaining, and not the product of fraud or collusion.

*Drexel,* 134 B.R. at 499 (*citing In re Texaco, Inc.,* 84 B.R. 893 (Bankr. S.D.N.Y.1988)); s*ee also In re Spielfogel,* 211 B.R. 133, 143 (Bankr.E.D.N.Y. 1997).

**B.      The Bankruptcy Court Conducted a Proper Hearing**

In the Debtor's brief, it is asserted that in considering whether the 2013 Settlement was in the best interests of the estate and fair and equitable, the bankruptcy court must receive testimony and documents in evidence.  In the first instance, this argument must be rejected as the Debtor failed to raise it as grounds for her appeal in her designation of issues on appeal.  [Bankr. Dkt. No. 113]  Even if this Court were to consider the argument, that argument must fail.

While the Debtor's brief correctly cites *TMT Trailer Ferry, Inc.*, *Iridium*, *Drexel* and *In re Telcar Group, Inc.*, 363 B.R. 345, 352 (E.D.N.Y. 2007) for the proposition that a settlement be in the best interest of the estate, none of those cases stand for the proposition that a determination on a motion made under Bankruptcy Rule 9019 must be supported by sworn testimony and documents admitted into evidence.

While the bankruptcy court should not blindly defer to a trustee's judgment, it is not required to rule on disputed issues of fact and law or to conduct a "mini trial" on the merits of the disputed matter, as asserted by the Debtor.  *TMT Trailer Ferry, Inc.,* 390 U.S. at 424; *Kayo,* 91 Fed.Appx. at 716; *Adelphia,* 327 B.R. at 159;  *Drexel,* 134 B.R. at 496; *Ashford Hotels,* 226 B.R. at 802.

Here, an extensive written record was developed by virtue of the submissions made by the Trustee, Debtor and Mason, and every party in interest had ample opportunity to be heard at the Hearing, which lasted just over an hour.  [Bankr. Dkt. No. 103]  In fact, Mason was heard every time a party in interest argued in support of the 2013 Settlement.  *Id.*

The bankruptcy court gave appropriate weight to the Trustee's opinion that the 2013 Settlement was fair and equitable, independently evaluated the reasonableness of the 2013 Settlement, and exercised appropriate discretion in concluding that the 2013 Settlement rose above the lowest rung in the range of reasonableness.

## C.     The Bankruptcy Court Made Appropriate Findings in Approving the 2013 Settlement

Contrary to the assertions made in the Debtor's brief, the transcript of the Hearing reflects the basis of the bankruptcy court's approval of the 2013 Settlement, including its concerns about the risk inherent in the appeal of the 2007 and 2012 Determinations, the delay in

distributions to the creditors of the estate and the collectability of the judgment that might ultimately be awarded.  [Bankr. Dkt. No. 103]

The bankruptcy court summarized its findings at the conclusion of the Hearing wherein it stated,

> I believe that there is an inherent risk in the appeal. There is a risk that there will be very little to compensate the trustee in this case on behalf of the debtor. There is substantial delay ahead which diminishes any recovery to anyone until it is ultimately decided. There is no evidence that it is fully collectible if it were to be obtained. And most important, I have to give credit to a trustee's business judgment after reviewing all of the issues placed before him. And, therefore, I must determine that the trustee's motion should be granted.

[Bankr. Dkt. No. 103, 52:19-53:2]

As it is evident from the record of the Hearing, and discussed in greater detail below concerning the *TMT Trailer Ferry* factors, the bankruptcy court made appropriate findings to support its decision and the 2013 Order should be affirmed.

**D.     The Record Supports the Bankruptcy Court's Approval of the 2013 Settlement**

As with the first argument raised on the Debtor's brief concerning the propriety of the Hearing, the Debtor's third argument that the "Trustee's proposed settlement figure lacked support" was not identified as grounds for appeal in her designation of issues on appeal.  [Bankr. Dkt. No. 113]  Even if this Court were to consider the argument, that argument must fail.

Contrary to the assertion that the bankruptcy court merely "rubber stamped" the Trustee's recommendation, the bankruptcy court considered extensive submissions and argument on the Trustee's motion.  As evidenced by the outcome of the motion by the Trustee seeking approval of the 2008 Settlement, the bankruptcy court is not in the business of blindly approving settlements advanced by Chapter 7 trustees.

17

Whereas the bankruptcy court previously concluded that the 2008 Settlement fell below the lowest rung in the range of reasonableness, a position also advanced in 2008 by the Office of the United States Trustee, the bankruptcy court's earlier concerns (and those of the Office of the United States Trustee) were overcome based on the amount of the 2013 Settlement, the litigation risks outlined in the record, the risk of collectability and the delay in distributions to the creditors.

The bankruptcy court was educated about the various legal challenges asserted by LIFT and Cordani to the validity of the 2007 and 2012 Determinations and, particularly, the prospective preclusive impact that the Debtor's failure to disclose the Claim could have on the Claim.

Counsel for the Trustee, LIFT and Cordani also discussed the financial condition of LIFT, the means by which it was funded and the assets available for collection of any judgment that might ultimately be awarded to the Trustee in connection with the Claim.  Mason's reliance on LIFT's tax returns substantiated that LIFT had few net assets and that these assets were trending down in recent years.  Mason was unable to address how these limited net assets would be sufficient to satisfy a judgment in the sum of her damage calculation or to demonstrate that LIFT's restrictive grants could be used to satisfy liabilities like a judgment.  Instead, Mason illogically contended that the accrual of interest on the judgment at the rate of nine percent per annum would be sufficient incentive for LIFT to satisfy the judgment or obtain a loan.  Given that LIFT is a not-for-profit enterprise funded by donations and grants and has few hard assets, Mason failed to articulate how LIFT might be sufficiently credit worthy to take out a loan from a financial institution to satisfy a judgment.

The record of the Hearing evidences that Mason's objectivity has been clouded by her pecuniary interest in the Claim as a creditor and has resulted in overconfidence bordering on arrogance. As the Debtor was the victim of the employment discrimination, one can appreciate her subjectivity in opposing the 2013 Settlement. However, more is expected of special counsel to the Trustee and she ought not have substituted her judgment as a creditor for the business judgment of her client, the Trustee, in advancing the 2013 Settlement. Here, neither Mason nor the Debtor have realistically assessed the collectability of any judgment arising from the Claim even if Mason's damages calculation, adopted by the Debtor, were sustained before the Second Department. This concern was one of several identified by the bankruptcy court in entering the 2013 Order.

For these reasons, the Debtor's third argument must be rejected.

**E.**      **The Bankruptcy Court Correctly Applied the *TMT Trailer Ferry* Factors**

After identifying the *TMT Trailer Ferry* factors and criticizing the bankruptcy court as having failed to apply and address them, rather than addressing these factors, the Debtor's brief enumerates its own set of factors supporting the vacatur of the 2013 Order. The brief specifically claims that: (a) the bankruptcy court failed to consider Mason's prior success; (b) the bankruptcy court failed "to address the contingency"; (c) the bankruptcy court erred in finding delay would injure the estate; (d) the bankruptcy court erred in concluding there was difficulty in collecting on any judgment awarded; (e) the bankruptcy court did not factor lack of complexity and expenses of litigation; and (f) the bankruptcy court's approval irreparably harms the creditors and Debtor's interest by leaving them nothing. In contrast to the Debtor, the Trustee has elected to directly address the actual *TMT Trailer Ferry* factors and demonstrate how these factors favor the 2013 Settlement.

The first factor enumerated, the likelihood of success compared to the benefits of the settlement, is the most important factor in determining whether or not a settlement should be approved. *Adelphia,* 327 B.R. at 160. "There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has [been apprised] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated [and of the other relevant factors]." *TMT Trailer Ferry,* 390 U.S. at 424; *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, No. 01 Civ. 5429, 2005 WL 756900, at *6 (S.D.N.Y. April 4, 2005).

The Trustee plainly considered the likelihood of success on the Claim compared to the present and future benefits offered by the 2013 Settlement.  In this regard, the Trustee did not share Mason's confidence that there was no risk that estoppel resulting from the Debtor's knowing nondisclosure of the Claim in her bankruptcy case would result in the 2007 and 2012 Determinations being annulled or that the award would not be substantially reduced on appeal on many of the grounds argued by LIFT and Cordani.

Moreover, success in litigation is measured not only by the award of a judgment, but more importantly, by the ability to collect that judgment.  Here, the Trustee reviewed information shared by LIFT concerning its financial condition and the grants by which it is funded and concluded that collectability was a bona fide concern.  In this regard, the Trustee's business judgment as to collectability was corroborated by the excerpts of LIFT's tax returns annexed to Mason's objection, which tax returns reflected finite net assets with which to satisfy any judgment.  Even as to these assets, the Trustee had considered that limitations imposed on the use of grant funds could have impeded his ability to collect against these net assets.

Second, as observed at the Hearing, in the absence of the 2013 Settlement, the estate was faced with the prospect of complex and protracted litigation. The Trustee would need to prepare and file his brief on appeal and LIFT and Cordani would then file their reply brief. The parties would then await the scheduling of argument before the Second Department on the pending petitions. Following argument, the parties would then await a decision from the Second Department. Counsel for LIFT and Cordani anticipated that it would take two years from the date of the Hearing to complete the briefing, have argument and receive a decision. [Bankr. Dkt. No. 103, 44:11-44:19] Depending on the outcome, there could be additional proceedings on remand or a further appeal. In contrast, the entire $300,000.00 settlement is to be collected under the terms of the 2013 Settlement by the end of 2015.

The third factor concerns the proportion of class members who do not object or who affirmatively support the proposed settlement. Here, none of the general unsecured creditors objected to the 2013 Settlement. Instead, both Mason and the Debtor have begun counting the award based on Mason's damages calculation as if the sum had been confirmed by the Second Department and collected. As noted above, Mason's compensation shall be determined by the bankruptcy court at a later date. As may be allowed by that court, Mason's prepetition retainer with the Debtor allows for a one-third contingency fee "of any and all sums recovered as a result of trial or by way of settlement after a lawsuit has been instituted" and such fee shall be computed based on the total recovery, whether by settlement or judgment. [Bankr. Dkt. No. 103, 10:5-10:14, 24:16-24:21; Bankr. Dkt. No. 96, Exhibit C] Thus, subject to bankruptcy court approval, based on the 2013 Settlement, Mason is entitled to a $100,000.00 fee, plus expenses under her prepetition retainer. While Mason has asserted an administrative claim of $70,000.00 arising from her services as special counsel to the Trustee, that compensation will be subject to

application to the bankruptcy court, the scrutiny of the Trustee and the scrutiny of the Office of the United States Trustee.  It is dubious that the time incurred by Mason can be justified in light of the status of the proceedings before the Second Department and extensions of the briefing schedule agreed to between the Trustee, LIFT and Cordani.  As result, Mason will still benefit significantly from the 2013 Settlement and it is anticipated that the Debtor will receive a surplus from the Settlement Sum.

Fourth, the counsel who supported the 2013 Settlement are competent and experienced attorneys.  The bankruptcy court heard argument from seasoned bankruptcy counsel for the Trustee and LIFT and Cordani, as well as employment counsel for LIFT and Cordani.  The Trustee was also heard by the Bankruptcy Court in support of his motion.  The bankruptcy counsel and the Trustee are routinely called upon to value and compromise claims during litigation and to monetize them for the near term benefit of creditors.  In doing so, they are not governed by emotion, rather they are cognizant of the overreaching purpose of the bankruptcy process.  While Mason is an experienced employment attorney and has been engaged in connection with the Claim for many years, her desire to advance her interests as a creditor at the risk of recovery for the benefit of other creditors of the estate and a prospective surplus to the Debtor evidences a lack of objectivity on her part.

Concerning the fifth factor, the 2013 Settlement is anticipated to benefit all of the classes of creditors and the Debtor.  Here, the Debtor derived the benefit of her voluntary bankruptcy filing, namely a fresh start arising from her discharge.  Notwithstanding her nondisclosure of the Claim, the Debtor has retained her discharge and is anticipated to benefit from a surplus from the 2013 Settlement.  Assuming Mason is allowed her full contingency fee in connection with the 2013 Settlement and that each of the disbursements claimed by Mason are bona fide

disbursements relating to her engagement, her total claim in this estate would be $112,121.33 on her allegedly secured claim. If the bankruptcy court granted Mason that compensation, $187,878.67 would be available to pay all of the administrative expenses of the estate in full, the $41,932.32 in claims filed by the other creditors and a surplus to the Debtor. These administrative expenses would include the Trustee's statutory commissions and the fees and expenses of his retained professionals, as allowed by the bankruptcy court. Mason's administrative claim would be subject to scrutiny and objection. In the end, the Trustee anticipates that net of Mason's contingency fee and expenses, the funds available to the estate would be sufficient to pay allowed administrative expenses of this estate, to make a 100% distribution to the general unsecured creditors and to pay a surplus to the Debtor.

The sixth factor concerns the nature and breadth of any releases to be issued as a result of the 2013 Settlement. Here, it is not surprising that LIFT and Cordani expect to be released from any and all claims against them that may be held by the estate or the Debtor prior to the Debtor's bankruptcy filing in exchange for the Settlement Sum.

Seventh, nothing in the record evidences that the 2013 Settlement is not the product of arm's length bargaining or the product of fraud or collusion. As noted above, several years ago the Trustee attempted to negotiate a settlement of the claim with LIFT and Cordani. The 2008 Settlement was rejected by the bankruptcy court. The Trustee only returned to the bankruptcy court in support of a new settlement after an extended period of time had passed, protracted negotiations and the settlement offer doubled. Thus, this factor favors approval of the 2013 Settlement. Moreover, while Mason complained below that she was excluded from the settlement discussions [Bankr. Dkt. No. 96], over time, it became evident to the Trustee that Mason had a fundamental misconception about her role as special counsel in this process and

that she believed her business judgment should be substituted for that of the Trustee as the fiduciary to all creditors of this estate.  As such, the Trustee's unwillingness to allow Mason's opinion to supersede his business judgment does not convert the negotiation into something less than arm's length.

Collectively, the *TMT Trailer Ferry* factors weighed in favor of the 2013 Settlement and the bankruptcy court correctly applied them in considering the 2013 Settlement.

## CONCLUSION

Based on the record, it is clear that the 2013 Settlement with LIFT and Cordani does not fall "below the lowest point in the range of reasonableness." *W.T. Grant,* 699 F.2d at 608. The Trustee convincingly identified before the bankruptcy court issues relating to the likelihood of success on the merits, risks of collection and the attendant delay in distributions to general unsecured creditors of this estate in the absence of the approval of the 2013 Settlement. Notwithstanding that the Debtor's failure to disclose the Claim might bar her from benefitting from any recovery on the Claim, there is expected to be a surplus from the Settlement Sum such that she will have obtained both a discharge of her prepetition debts and a financial benefit from the Claim.

It is also clear that if the parties continue the litigation relating to the Claim it would be complex and lengthy. Given that the case is more than 10 years old, distributions to creditors delayed any further are distributions effectively denied them. The other factors are not the subject of bona fide dispute. Therefore, the 2013 Order approving the 2013 Settlement should be affirmed on appeal.

Dated: Wantagh, New York
April 21, 2014

LAMONICA HERBST & MANISCALCO, LLP
*Attorneys for R. Kenneth Barnard, as Chapter 7*
*Trustee of Lynn Carol Schneider*

By:     ___*s/David A. Blansky*___
Gary F. Herbst, Esq.
David A. Blansky, Esq.
Partners of the Firm
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500

*M:\Documents\Company\Cases\Schneider, Lynn\Appeal of 9019 Order by Debtor\Trustee's Brief on Appeal.docx*