Case Number 2:14-CV-01166-JMA

Dear Judge Azrack,

    I am attaching as per your order, a copy of the December 10, 2013 Bankruptcy Court Hearing Transcript.

Lynn Schneider

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   MAR 04 2015   ★

LONG ISLAND OFFICE

CC: Gary F. Herbst
     David Blansky

RECEIVED

MAR 0 4 2015

EDNY PRO SE OFFICE

1

1  UNITED STATES BANKRUPTCY COURT

2  EASTERN DISTRICT OF NEW YORK

3  Case No. 04-85727

4  - - - - - - - - - - - - - - - - - - - - - - - - - x

5  In the Matter of:

6

7  LYNN CAROL SCHNEIDER,

8

9             Debtor.

10

11  - - - - - - - - - - - - - - - - - - - - - - - - - x

12             U.S. Bankruptcy Court

13             290 Federal Plaza

14             Central Islip, New York   11722

15

16             December 10, 2013

17             10:21 a.m.

18

19  B E F O R E:

20  JUDGE DOROTHY EISENBERG

21

22

23

24

25

```
 1    A P P E A R A N C E S :

 2

 3         BY:   ELIZABETH MASON, Secured Creditor

 4               Elizabeth A. Mason, LLP

 5               200 Park Avenue, 17th Floor, New York, NY   10166

 6               212-319-9092

 7

 8         BY:   LYNN CAROL SCHNEIDER, Debtor

 9

10         BY:   DAVID BLANSKY, Trustee

11               Lamonica, Herbst and Maniscalco, LLP

12               3305 Jerusalem Avenue, Wantagh, NY   11793

13               516-826-6500 x 207

14

15         BY:   MARC A. PERGAMENT, Long Island Forum for Technology

16               Weinberg, Gross And Pergament LLP

17               400 Garden City Plaza, Garden City, New York   11530

18               516-877-2424

19

20         BY:   ALFRED DIMINO, Trial Attorney

21               Office of United States Trustee

22               560 Federal Plaza, Central Islip, New York   11722

23               631-715-7800 x 226

24    Transcribed by:   Jodi Kanestrin

25
```

1  Hearing re:

2

3  Matter:    Motion to Compromise Controversy Pursuant to Federal

4  Rule of Bankruptcy Procedure 9019(a), Seeking Approval of

5  Stipulation of Settlement By and Between R. Kenneth Barnard, as

6  Chapter 7 Trustee, the Long Island Forum for Technology and

7  Richard Cordani by David A. Blansky on behalf of R. Kenneth

8  Barnard.  (Entered:  11/08/2013)  [94]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

[10:21:38]

THE COURT:  This is the matter of Lynn Carol Schneider.

MS. SCHNEIDER:  I'm Lynn Carl Schneider.

THE COURT:  All right.  All right.  This is a Motion to Compromise.

I'll hear the appearances.  Identify yourselves.

MISS MASON:  Elizabeth Mason.  I am an attorney appearing pro se as the Estate's largest secured creditor and also as the Estate's, as one of the Estate's administrative creditors pursuant to Your Honor's Order where I was appointed as special, Counsel to the Trustee.

THE COURT:  All right.  Thank you.

And you are?

MS. SCHNEIDER:  Lynn Schneider.  I'm the Debtor.

THE COURT:  All right.

MR. BLANSKY:  Good morning, Your Honor.  David Blansky, Lamonica, Herbst and Maniscalco appearing on behalf of R. Kenneth Barnard.

And also present, Mr. Barnard is present along with my partner, Mr. Herbst.

THE COURT:  All right.  Anyone else?

MR. PERGAMENT:  Good morning.  I'm Marc Pergament, Weinberg, Gross and Pergament, Your Honor, Counsel to Long

1    Island Federation, Long Island Forum for Technology.

2              Also present, Your Honor, is the C.E.O. of the

3    Not-for-Profit corporation and we're here in support of the

4    Trustee's Motion seeking Your Honor's approval of the

5    settlement.

6              THE COURT:  All right.

7              And I see the U.S. Trustee is represented by Mr.

8    DiMino.

9              MR. DiMINO:  Good morning, Judge.

10             Alfred DiMino from the Office of the United States

11   Trustee.

12             THE COURT:  All right.  All right.

13             This is your Motion.

14             MR. BLANSKY:  Yes, Your Honor.  Your Honor, probably,

15   little did you imagine five or six years ago that you would

16   find us back before Your Honor in another Motion seeking Court

17   approval.

18             As the Court may recall, approximately five or six

19   years ago the Trustee proposed a settlement of a different

20   magnitude, $150,000, which was opposed at the time, not

21   supported by the U.S. Trustee's office and ultimately denied by

22   the Court.

23             At the time this Court had a number of concerns one of

24   which was ultimately what might the, how might the Debtor

25   benefit from it and, two, what would be down side to the Estate

1   in terms of cost, expense and delay if the matter were to be
2   pursued further.
3          If we go back a little bit further in time, the
4   genesis of this case is that this was a case that was re-opened
5   to allow the Trustee to administer this discrimination claim.
6   That was a claim that had not been disclosed initially but was
7   brought to the Court, the attention of Mr. Barnard at a later
8   date and the case was re-opened for that purpose.
9          The purpose of this hearing today is not to make light
10  on what the Debtor experienced and what she went through.   The
11  point of this hearing is not to criticize the diligence of Ms.
12  Mason in pursuing the underlying award.
13         The issues we have to deal with in the context of this
14  hearing are whether Mr. Barnard is properly exercising his
15  business judgement in putting this before the Court and how
16  might benefit creditors of the Estate.
17         Here we have a number of tensions that work.   One of
18  them we have to consider the integrity of the bankruptcy system
19  that depends on full and honest disclosures of Debtors.
20         At the same time we have to be sensitive to the fact
21  that we don't want wrongdoers to get windfalls in circumstances
22  like this because it hurts creditors.
23         So we have these tensions at issue.
24         Today before the Court is a settlement that is twice
25  the amount that the Court considered five or six years ago.

1    Proposed settlement structure for a $75,000 payment now and

2    quarterly payments of roughly $28,000.

3            In the event of non-payment, the settlement provides

4    for Judgement in the principal sum of the award that was made

5    in 2007 together with interest from April of 2007 at nine

6    percent.  It is a serious default remedy.

7            And here the questions become how will it benefit

8    creditors of the Estate and this is where things get a little

9    dicey.  What we have before you is objections by the Debtor who

10   failed to disclose the claim and the Trustee's Special Counsel

11   who also indicates that she's Administrative Creditor under her

12   retention and a creditor by virtue of her status as

13   pre-Petition employment Counsel to Ms. Schneider.

14           None of the unsecured creditors have filed objections

15   to the Motion.

16           And there's unusual incidents in which Special Counsel

17   to the Trustee has decided to superimpose her judgement or

18   assessment of a settlement over that of the client, Mr.

19   Barnard.  In that regard, this is an exceptional case because

20   typically it's Mr. Barnard in his capacity as fiduciary that

21   makes a determination, puts it before the Court for approval.

22   It's usually not subject to the approval of his Special Counsel

23   that had been retained to follow those directives and that's

24   one of the frustrations here.

25           But more significantly, we think that we've come

1   before the Court with an award of a very different magnitude

2   that takes into account the, the likelihood of success on the

3   merits, the costs to be incurred among other factors that you

4   typically see in these cases.

5           Here we're surprised to see in the opposition papers

6   that the estimated amount of Ms. Mason's Administrative Claim

7   has reached $70,000.  She was retained, I believe, in April of

8   2009 and I know that we had reached the prospective settlement

9   number early in this year and went to sort of a pens down

10  status.  So I don't know what, what has been incurred in the

11  more recent months.  We've never seen a bill or an invoice but

12  that's not for today.

13          Ultimately the Court's concern for today is what might

14  be recovered, how might it be disbursed and at the end of the

15  day what might the Debtor see in the event of surplus.

16          Here I think the settlement is contemplated to provide

17  for funds to the Debtor notwithstanding that there's case law

18  that says that the non-disclosure, partial participation and

19  recovery.  This is a Court of equity and I think even the lift,

20  and Mr. Granovi (phonetic) acknowledged that under the facts

21  and circumstances, a settlement should contemplate some benefit

22  to the Debtor under these circumstances even if there might be

23  a scenario under the cases that says she should not

24  participate.

25          At the end of the day the Court will determine what

1    fees will be appropriate to Miss Mason, to Trustee's General

2    Counsel, even Trustee's commissions to see whether they're

3    appropriate and give the entire picture on what the Debtor may

4    be entitled to receive under the facts and circumstances.

5         The single largest claim in the case is, of course,

6    that of Miss Mason.  She's filed a claim arising from the

7    charging lien under the Judiciary Law.  Under her pre-Petition

8    retainer, that sum is measured by what is actually recovered by

9    settlement or Judgement.

10        To the extent the Court approves the settlement,

11   that's going to be measured by a third plus her expenses.  So

12   if the Court does not then reach, I guess this will continue to

13   prosecute this and whatever comes out at the end of the day

14   will, in terms of the amount of the administrative claim,

15   (inaudible) the number, but, of course, that is going to be

16   subject to your approval as to the value to the Estate, what

17   new work was done, how much work was done after a demarcation

18   line between wherein a settlement posture versus a, the

19   litigation posture.  And, of course, what is the continued

20   expense of the Estate to proceed.

21        I understand from Miss Mason's papers that a briefing

22   deadline for the Estate is arriving, I believe she thought it

23   was approximately the 25th.  I think by my calculations it may

24   be the 16th.  But it is a near term date.

25        I imagine there would then be a reply and then

1   argument before the Second Department at some point next year.

2   And then, I guess, a determination thereafter at some point.

3        Here we have a case that, you know, it's the 2004 case

4   and we're still here.  I think we've been presented with an

5   opportunity and a double the magnitude that was before the

6   Court before that was one that the Court could not, the Trustee

7   could not lightly disregard and not bring to the Court.

8        We have a relatively small unsecured creditor body.

9   That will certainly benefit them.  And depending on the outcome

10  of the proof of the settlement and how the Court perceives the

11  professional fees, there should be money here leftover for the

12  benefit of the Debtor.

13       And so for these reasons we think that we do meet the

14  test for the approval of the settlement and that the Trustee

15  has appropriately exercised in his business judgement under the

16  circumstances.  They're not easy ones but I think they're

17  appropriate ones.

18       THE COURT:  Which, which creditors remain?

19       MR. BLANSKY:  Your Honor, I believe it's an assortment

20  of small unsecured creditors.  We have --

21       THE COURT:  Other, other than Miss Mason.

22       MR. BLANSKY:  Right.  We have --  Well, we have G.E.

23  Money which is a small Claimant.  We have a Discover Bank,

24  probably the single largest unsecured for $18,000.  We have

25  Capital One for a small sum of money.  The single largest claim

1  seems to be a credit card and then two smaller credit cards.

2  The rest would --  The rest on the filed docket would have been

3  the administrative claims at the time that she had proposed the

4  Chapter 13.

5          So it's roughly $40,000 of unsecured debt.

6          THE COURT:  Okay.  That's what I wanted to know.

7  Approximately $40,000.

8          MR. BLANSKY:  $40,000 to $42,000 but I believe one of

9  the claims is actually an amendment to an earlier claim for

10  $1,500 and once addressed it would change the claim some --

11          THE COURT:  Okay.

12          MR. BLANSKY:  -- but you're talking about the $40,000

13  of true unsecured debt.

14          THE COURT:  All right.  Is that your presentation,

15  Sir?

16          MR. BLANSKY:  Yes, Your Honor.

17          THE COURT:  All right.  Anyone else wish to be heard?

18          MISS MASON:  Your Honor --

19          THE COURT:  Yes.

20          MISS MASON:  -- I would like to be heard.

21          THE COURT:  Yes.

22          MISS MASON:  Thank you.

23          I'm appearing as pro se attorney with the largest

24  secured claim of the Estate.

25          Presently my secured claim is valued at $234,000.  I

1    also have an administrative claim that is currently valued at

2    $70,000.   Together that's more than $300,000 in legal fees.

3         I should add, Your Honor, that I have been

4    representing Ms. Schneider in this case or I should be handling

5    this case the last thirteen years of my life and I have

6    received not one penny for that representation.

7         My compensation is going to be entirely dependent upon

8    the success of my enforcing a damage award that is now worth

9    approximately $700,000.

10        THE COURT:  How do you arrive at that because I have

11   looked at the Trustee's figures and he didn't come up to that

12   number at all.

13        MISS MASON:  That's your --  That's correct.  And

14   that's one of the main reasons of many why we oppose the

15   Trustee's --

16        THE COURT:  Well, tell me how you arrive at your

17   number.

18        MISS MASON:  My Exhibit A to my papers sets forth the

19   itemization by which I arrived at that figure.

20        THE COURT:  Well, what, what happens if you proceed

21   and the Court goes the other way and says that there should not

22   be any award?

23        MISS MASON:  That's, that's a good question, Your

24   Honor and I, I feel I, I have personal knowledge that can

25   answer that question.

1        There is two issues here.  The first issue is that the
2  State Appellate Court has already ruled in our favor that the
3  Trustee has standing to file this claim and collect this claim.
4  That is no longer an issue that is on the table.
5        THE COURT:  Is this an appeal?
6        MISS MASON:  There is no appeal of that.  There was no
7  appeal.  The decision was rendered in 2012.  It's my Exhibit D.
8  and that decision expressly states that the Trustee, pursuant
9  to comedy, principals of comedy, is permitted to collect and
10  enforce this award as is the division of human rights.
11        The second ground upon which L.I.F.T. is seeking to
12  appeal this award is the merits of the award.  Now the merits
13  of the award have already passed through several layers of
14  review.  The Division of Human Rights is the entity that came
15  up with this award and it rendered this award in a thirty-six
16  page decision.  That decision has been provided to Your Honor
17  as well.  It's also a part of Exhibit B.
18        Now on review, there's a very difficult standard that
19  would have to be met by L.I.F.T. to demonstrate that this award
20  should be vacated because this, the Appellate Court's recognize
21  that the Commissioner of the Division of Human Rights is in the
22  best position to assess the merits and the damages of this
23  case.
24        I was before that Second Department Appellate Court
25  back in 2010.   They had read the, the L.I.S.T. brief and they

1   stated in the bench to both L.I.S.T. Counsel and myself that

2   they felt that this was a very strong case of discrimination

3   and retaliation.

4           I am resting my entire fee on the successfulness of my

5   obtaining the enforcement of this award on appeal.  I surely

6   believe that because I'm the only secured creditor that has

7   anything to risk, I would be in the best position to make the

8   assessment as to the merits of this decision.  I have the most

9   to lose if this Court were to grant today's proposal and I have

10  everything to win if this Court were to reject it.

11          I can state having been practicing in employment

12  litigation for the last approximately twenty-three years of my

13  career, and that is my sole practice, employment

14  discrimination, that I am in, perhaps, the best position as it

15  relates to the Trustee or myself as to assess the merits of

16  this case.  And it is my professional opinion that the merits

17  warrant enforcement of the award.

18          If this award is allowed to be enforced, there is

19  continuing statutory interest that accrues at the rate of nine

20  percent until it's paid in full.  There is a very, very slim

21  likelihood that they would ever appeal it to the higher Court

22  if they were to lose because they would have to post a bond

23  worth approximately $700,000.  Previously in papers filed with

24  this Court, they said they would never, they could not post a

25  bond as a non-profit.

1    I have also provided the Court with tax returns filed

2   by L.I.F.T. which are public because it's a non-profit

3   organization which demonstrate that it has generated income on

4   its own in the seven figures every year for the last, you know,

5   three or four years.

6        This is a viable, successful organization that fully

7   has the capability of paying this Judgement.  And until it's

8   paid, the Estate is going to generate nine percent interest on

9   this Judgement.  So every day, every week, every month that

10  goes by, more money comes in to the Estate which can benefit

11  the Debtor because she's going to be the one who is going to be

12  recovering after everybody else is paid.

13       Now I would like to point out that the only entity

14  that is not here are any of the unsecured creditors who, whose

15  claims only amount to $40,000.

16       THE COURT:  Which leads me to believe you're arguing

17  on behalf of your client.

18       MISS MASON:  I am --  Well, actually, Your Honor, I

19  am, I think I can present an argument as why my, my position is

20  going to also benefit the unsecured creditors as well as the

21  Debtor.  And the reason why I say that is as follows:

22       I have what's called a --  I have two claims, a

23  secured claim as a, as a attorney holding a statutory claim for

24  legal fees.  The law is very clear that when an attorney

25  handles a case in New York, their legal fees is protected by a

1   statute.  And that statute is near, Judiciary Law 475.

2   Bankruptcy Code is not permitted to compromise that statute.

3   The law is very clear and I have numerous cases demonstrating

4   that to be the case.  If you would like the sites, I can give

5   them to you.

6           Because of that, that lien regarding my legal fees

7   came into effect the moment I entered the case to represent Ms.

8   Schneider back in 2000.  So, therefore, right now when I filed

9   my initial lien for attorneys fees in 2008, I think it was,

10  those fees were protected and could not be compromised by the

11  Trustee because they were considered to be a --

12          THE COURT:  We're not dealing with the fees now.

13          MISS MASON:  Okay.

14          THE COURT:  I'm trying to determine --

15          MISS MASON:  Okay.

16          THE COURT:  -- whether, whether I should approve this

17  proposed settlement and you're telling me that your fees are

18  protected.

19          MISS MASON:  Okay.

20          THE COURT:  That doesn't answer it.

21          MISS MASON:  All right.  I'll get to the point.

22          So if you satisfy my liens, my fees which right now,

23  and I, I understand it's to the Court's discretion to determine

24  what's a reasonable fee and what's not a reasonable fee.  Right

25  now my fees are approximately $300,000.  All right.  That --

1          THE COURT:  I, I get it that you, you --

2          MISS MASON:  So --

3          THE COURT:  -- are seeking to protect your fees.  Why

4    should I not approve in the bankruptcy case the proposed

5    settlement?

6          MISS MASON:  Because to --  If my fees are protected,

7    you take $300,000 off of, of what's being established today as

8    the, the proposed settlement which is $300,000.  That does not

9    address other administrator claims.  It does not address the

10   Trustee's fees.

11         If you take those fees, which the Trustee did not

12   provide in his papers, we have no idea what he intends to

13   deduct from that $300,000, in addition to which there are liens

14   that potentially also exist for Medicaid and other benefits the

15   Debtor, the Debtor has obtained.

16         That leaves nothing to satisfy the $40,000 in

17   unsecured creditors and it leaves nothing for the Debtor

18   whereas, Your Honor, if you were to allow me to continue to

19   collect this award, which you ordered that to happen four years

20   ago pursuant to your Order to appoint me as Special Trustee to

21   the, to the Trustee, Special Counsel to the Trustee, excuse me,

22   we would potentially have a $700,000 award.  I would take my

23   portion of it.  The administrator claims would be paid in full.

24   The unsecured creditors claims would be paid in full.  And the

25   Debtor would, would receive the balance --

```
 1            THE COURT:  I've heard that.  I, I hear you.
 2            MISS MASON:  Okay.
 3            THE COURT:  Now tell me what about the merits of the
 4       objection by, on, on behalf of L.I.F.T. and Cordani.
 5            MISS MASON:  I would submit, Your Honor, that there
 6       were, there was virtually nothing in their papers that
 7       demonstrated the merits supporting the compromise of this
 8       damage award.  They speak about this lack of jurisdiction issue
 9       which I've already demonstrated has been fully decided in the
10       Trustee's favor.  That's not an issue.  So that argument is off
11       the table.
12            The only other issue is whether or not the case will
13       be, the, the damage award will be upheld on appeal.  And as
14       I've stated, there's every reason for me to expect that it
15       would based on the, the Court's statements to Counsel during
16       our oral argument, based on my appellate brief which I've
17       already filed previously and I've addressed all the law and I'm
18       familiar with the law.
19            So --  And then the only other issue was they said
20       collectability but I've already demonstrated that their
21       collectability argument is also vacuous because of the fact
22       that their tax returns full reflect the ability to generate
23       income and pay this award until it's satisfied.
24            THE COURT:  Well, the last few years they didn't have
25       very much --
```

1        MISS MASON:  I'm sorry, Your Honor?

2        THE COURT:  In the last few years based on the tax

3   returns that were filed, there wasn't that much in income over

4   and above their expenses.

5        MISS MASON:  They have, in 2011 they put --

6        THE COURT:  How about 2012?

7        MISS MASON:  They don't have --  They --  Those tax

8   returns have not been provided.

9        THE COURT:  All right.  Just 2011?

10        MISS MASON:  Yes, Your Honor.

11        THE COURT:  And what is that?

12        MISS MASON:  And for 2011 they earned outside of fund

13   money, $2 million in addition to which they --

14        THE COURT:  Well, what was, what was left after

15   expenses?

16        MISS MASON:  Well, they have on their books, they put

17   on their books this damage award so after accounting for this

18   damage award on their books, they have $150,000 left.

19        And Judgements can be satisfied for twenty years.  And

20   here we have the best security.  We have nine percent interest

21   accruing.  They have every incentive to pay this Judgement

22   immediately.  They can take out a loan, you know, and, and pay

23   it.

24        The bottom line is, they have the means to pay it and

25   that's something that can be paid over --  The longer it takes

1    for them to pay it, the better the Debtor is.

2              THE COURT:  All right.

3              MISS MASON:  Thank you, Your Honor.

4              THE COURT:  All right.  Anyone else wish to be heard?

5              MR. PERGAMENT:  Yes, Your Honor.

6              MS. SCHNEIDER:  Yes.

7              MR. PERGAMENT:  If I may.

8              MS. SCHNEIDER:  I have --

9              THE COURT:  All right.

10             MR. PERGAMENT:  Your Honor, I think the Debtor wants

11   to be heard.

12             THE COURT:  All right.  I'll hear from the Debtor.

13             MR. PERGAMENT:  Because I'm standing in support of the

14   application so let's hear the objection.

15             MS. SCHNEIDER:  Hi, Your Honor.  I wanted to object to

16   the, to the Trustee's motion because once my creditors are paid

17   then there won't be anything left for me and I know I made a

18   mistake and I explained to you last time about the asset

19   because I couldn't afford to have an attorney so I filed pro se

20   and I did make a mistake.

21             THE COURT:  Well, when you decided to act pro se,

22   there is a question that asks whether you have any claim.

23             MS. SCHNEIDER:  Well, it said do you have --  It says,

24   do you have any assets and I hadn't gone to, I hadn't won at

25   that point and when I went to college an asset to me when I

1    went for my Masters is an asset is something you hold in your

2    hand.  An asset is money.  And I hadn't gone to Court yet.  So

3    I didn't know if I was going to win or not.

4         So that's --  And when I went to go with the pro se

5    office, they don't answer any legal questions for you.  They

6    just say, you have to ask an attorney.  And when you don't have

7    an attorney to ask questions for that, you get messed up like I

8    did.  And I apologized a million times for this and I, I am

9    sorry.  I didn't do anything to, to mess this up because I

10   really didn't want to do that.  I didn't want to hide anything

11   from anybody and I said right away when they asked about the

12   bankruptcy, I told you.

13        But I, I just want the opportunity again to say I, I

14   apologize.  You know, I just, I just want the opportunity to,

15   to go after my entire Judgement because I want to be able to

16   pay off my creditors, I want to pay off Elizabeth for the, you

17   know, for representing me.  And I want to just start a new

18   life.

19        And I just want L.I.F.T., because L.I.F.T. and, and

20   Dick Cordani and, and Walter Mickel (phonetic), they should pay

21   what they did to me.  They really ruined my life and it's

22   seventeen years, Your Honor.  It, it's seventeen years and I

23   just want them to be accountable, held accountable because to

24   me this feels like, going back and forth like this, it's a joke

25   and my life is not a joke.  And I just want them to be held

1  accountable because they did this to me and just because I made

2  a mistake, I don't want this to be just because I made a

3  mistake.

4  I stood up for what I did wrong and I told you what I

5  did wrong.  Now it's their turn to stand up for what they did

6  wrong.

7  THE COURT:  All right.

8  MR. PERGAMENT:  Good morning, Your Honor.

9  On, on behalf of Long Island Forum for Technology,

10  Your Honor, I want to address several points with respect to

11  the Trustee's Motion and we also have Special Counsel who is

12  familiar with what transpired with the Appellate Division so

13  we'll have Counsel explain that to Your Honor about the merits

14  of the claim and what the Appellate Division said or did not

15  say because I believe Your Honor was given misinformation.

16  Several points, Your Honor.  First of all, Ms. Mason

17  repeats something several times.  The more you repeat it, it

18  doesn't make it true.  She is not a secured creditor.  She is

19  entitled to a third of the amount recovered.

20  Right now the recovery is zero.  If the Trustee

21  recovers $300,000, she gets a third of $300,000.  It's

22  $100,000.  She doesn't get a third of $700,000.

23  Number two, her so called administrative claim, Judge,

24  was the manufactured administrative claim because, and Mr.

25  Blansky is much more polite and nicer than I am, we were trying

1   to settle this matter.  We were extending the time to file the

2   brief in the Appellate Division.  Mr. Barnard, through Counsel,

3   agreed to extend that time so that my client would not have to

4   incur the expense of doing a brief.  And Miss Mason would not

5   have to spend the time doing that while we're trying to work

6   out a settlement.

7        Despite explicit direction by the Trustee, Miss Mason

8   opposed the extension of time to file the brief.  I've never

9   had it.  Your Honor, if I was a Trustee and a Special Counsel

10  did that to me, that Special Counsel would not have been my

11  Counsel anymore.  But Mr. Barnard put it aside, let's deal with

12  the merits.

13       So she (inaudible) and did what her client told her.

14  That is her client.  Miss Mason doesn't do what Ms. Schneider

15  tells her to do.  She has to do what Mr. Barnard has to, tells

16  her to do.

17       Number two, Your Honor -- So there's $70,000 in

18  expenses.   Your Honor, I believe it's just make believe.

19  Okay.  But that will be dealt with by Your Honor down the road.

20       If the award of -- If the settlement of $300,000 is

21  approved, Miss Mason will get $100,000.  The Trustee would get

22  his commissions on $300,000 which Your Honor is aware is

23  approximately $17,000.  Mr. Lamonica's firm, Lamonica and

24  Maniscalco, will get its legal fees subject to, of course, a

25  hearing before Your Honor.  And the unsecured creditors get

1  paid in full and the money left over, which will be

2  substantial, goes to Ms. Schneider.

3       So Ms. Schneider does get a fresh start even though

4  she did not answer Your Honor's question.  The bankruptcy form

5  says, do you have any claimed or law suits that you could

6  pursue?  It doesn't say, give me the assets.  It says, do you

7  have any claims or law suits.

8       And Your Honor was fully aware of what that

9  (inaudible).  She purposely said no.  and what happened was

10 when she was going to lose the case, she came to Court and

11 said, oh, I forgot, I forgot to list this law suit.  So she

12 knew what she was doing then.  She got caught and said, oh, my

13 mistake.  And then she did answer Your Honor's question as to

14 why she didn't list the asset because it's not an asset, it's

15 within the sub-category of claims and that's what the form is.

16      And Your Honor who conducted more 341 meetings than I

17 would want to count, one of the questions Your Honor asks is,

18 do you have any claims or law suits that you could pursue or

19 the trustee could pursue on your behalf?  That is a standard

20 question at 341 meetings Your Honor conducted years ago that

21 Mr. Barnard still conducts today.  And the answer of the Debtor

22 was no.

23      So she misrepresented at 341 meeting and continued

24 that misrepresentation.

25      With respect to Miss Mason's argument that there's all

1   this revenue that you can collect this Judgement, first of all,

2   Your Honor, she's mistaken.  You could appeal to the Court of

3   Appeals without filing a bond.  The Judgement could be enforced

4   unless the Court of Appeals says it should be stayed.

5          Number two, as Your Honor zeroed in correctly, there

6   is minimal available assets of Long Island Forum and

7   Technology.  It is a non-for-profit.  Its assets are

8   effectively its equipment and its revenue is either donations

9   or grants that come from government agencies that are what we

10  call restricted grants.  What does that mean?  That means the

11  funds have to be used to specified purposes.  It cannot be used

12  for certain expenses.  It cannot be used  for liabilities.

13         So at the end of the day even if Your Honor did not

14  approve the settlement and even if the Appellate Division

15  affirms the award of the administrative agency, it's not a

16  trial, it's an administrative agency, and the Court of Appeals

17  does not reverse, the Trustee then tries to pursue this

18  Judgement.

19         Well, Long Island Forum of Technology has about

20  $75,000 in its bank account.  That's not going to pay a

21  $700,000 award.  So at the end of the day who gets hurt here is

22  actually your creditors.  They get nothing because that money

23  gets gobbled up in Miss Mason's fees.

24         And, as Your Honor is aware, it is hard to predict as

25  a Trustee what an Appellate Court will do especially we're

1   talking about a trial before the State Supreme Court.  There

2   was an administrative hearing that went on for years, years and

3   Counsel will explain to Your Honor a lot of the problems with

4   that administrative hearing.  It's not as though my client

5   wanted to settle for $300,000.

6           We considered the risk.  Mr. Barnard considered the

7   risk.  And we weighed the risk of a reversal by the Appellate

8   Division versus a risk of course of an affirmance and had

9   considered collectability.  We provided Mr. Barnard what

10  financially he requested in addition to the public documents

11  that he had.  He reviewed that with his Counsel, very expert

12  Counsel, Your Honor, we're not talking about Trustee's Counsel

13  who are inexperienced in these kind of matters, Your Honor, and

14  we negotiated hard.

15          We did not offer $300,000 in the beginning.  We went

16  back and forth, Your Honor, and we ultimately agreed on that

17  amount and because of my client's financial position, we need

18  several years to pay it back.  That tells you that my client is

19  not awash with cash.  Gross revenues is not money in the bank.

20  That just means the money comes in and has to pay expenses,

21  payroll, rent, etcetera and I think Your Honor recognized that

22  and Miss Mason really did not answer Your Honor's question

23  because the tax returns show the amount in the bank for all the

24  years, if you go back all these years, there's less than

25  $100,000 a year.

1         This is basically a not-for-profit that brings in

2  money, pays the expenses, serves the public and that's what it

3  does.  It doesn't reward anybody else.  There's no dividends.

4  That's why it's a not-for-profit.

5         And I think Your Honor, based on the facts before Your

6  Honor and the facts that Miss Mason just, really is just making

7  up arguments, there is no real objection of any merit to the

8  Trustee's application.  And I believe Your Honor should grant

9  the application and approve the settlement.

10        THE COURT:  All right.  Anyone else wish to be heard?

11        MR. WENGER  I would like to be heard if I may, Your

12  Honor.

13        THE COURT:  Yes.  Identify yourself and tell me who

14  you represent.

15        MR. WENGER  My name is Mark Wenger.  I'm with the law

16  firm Jackson Lewis PC and I represent the Long Island Forum for

17  Technology and I rise in support of the proposed settlement.

18        There have been some comments in this proceeding with

19  respect to the merits of the underlying claim and the appeal

20  proceedings.  I am the attorney representing L.I.F.T., and Mr.

21  Cordani as well, the individual Defendant who has been dragged

22  through this process for these many years, and I am in a

23  position to comment on the status of those proceedings, how

24  they've come to this point and where they're likely to go.

25        There have been some representations about what's

1    happened previously and what the Appellate Division panel

2    apparently commented on about the merits of the claim.  I am

3    here to tell you what was said.  It was definitely not what the

4    Appellate Division said about the case.

5           They made a determination on our initial appeal from

6    the award of the State Division of Human Rights that the

7    individual Debtor did not have the capacity to pursue that

8    claim.  That is the only issue that they decided.  They did not

9    opine on the merits of the claim.  They remanded the matter to

10   the Division of Human Rights for substitution of the Trustee.

11   The Division of Human Rights then confirmed the original award

12   and we've now taken an appeal on numerous grounds, many of

13   which we asserted in our original appeal.

14          But there is, there are a slew of issues any one of

15   which could render the State Divisions award annulity and there

16   is a, in my opinion, and I've been litigating employment

17   discrimination cases for twenty-six years to the extent that

18   that's relevant, there is a substantial likelihood that the

19   award is either vacated or that it is reduced, possibly as much

20   as by half.

21          Even if the Debtor wins on the merits of the award,

22   she may recover something less than $400,000 and I would be

23   happy to explain how that could happen.

24          THE COURT:  Yeah.  Why don't you do that.

25          MR. WENGER  Sure.  There are a number of elements of

1    damages in this award.  Primarily among them are back pay.  The

2    Debtor was an employee of L.I.F.T., she claimed that she was

3    subjected to sexual harassment, that she complained and that at

4    some point she was terminated and that was in retaliation for

5    her complaints.

6         But one of the elements of damages that she's claiming

7    and that the Division of Human Rights awarded her was back pay.

8    It is our contention that the back pay award is, even if you

9    were, even you sustain the merits, and I certainly disagree

10   with that and I think the standard of review on appeal has been

11   mischaracterized and that there is a, the Division of Human

12   Rights awards are reversed on appeal all the time and this is a

13   prime candidate for it, but leave aside the merits of the

14   sexual harassment and retaliation claim.

15        Back pay award, she was, she was employed I think up

16   until 1996 or 1997.  She's, yeah, claiming back pay for several

17   years and then nine percent interest on top of that.  She has

18   an obligation to mitigate her damages.  The record is replete

19   with evidence that she failed to meet her obligation to

20   mitigate her damages.  The Division of Human Rights made no

21   comment on that issue.  We believe that on, on appeal the

22   Appellate Division will examine that issue and they may well

23   conclude that if she's entitled to any back pay, it will be for

24   a brief period of time until she failed to meet her mitigation

25   obligations.

1          We also believe that the interest calculations are

2   wildly overstated.  They've ran --  The, the Division of Human

3   Rights is running interest from 2000.  A hearing was not

4   commenced in this proceeding until 2004.  Now that's almost

5   eight years after the, the Debtor was terminated.  We believe

6   that the Division of Human Rights delay should not be assessed

7   against L.I.F.T.  Nine percent interest shouldn't run during

8   that time.  It was not through any fault of L.I.F.T. that the

9   proceeding was delayed for that length of time.

10          And then on top of that, the Debtor ignores her

11  obligations to schedule this administrative claim as an asset

12  causing further delay and apparently now benefiting from the

13  nine percent interest that runs during that delay.  We believe

14  that all of those issues will be addressed by the Appellate

15  Division and when they do, that they will substantially reduce

16  the award.

17          There are other elements of damages as well.

18  Compensatory damages for example, basically emotional distress

19  damages.  There was no medical evidence produced during this

20  hearing regarding her emotional distress and yet the Division

21  of Human Rights awarded $75,000 for emotional distress.  We

22  believe the case law is clear that that's an excessive award.

23  Interest should not run on top of that award in any event.  But

24  that amount should be reduced substantially.

25          There are, there are other issues I think that we've

1    raised with respect to the appeal and the calculation of

2    damages.

3           All-in-all I think if she wins, there is a

4    considerable likelihood if she wins on the merits that she

5    walks away with less than $400,000.

6           Now, as to the merits, we also believe that since her

7    claims are two-fold, harassment and then retaliation.

8           The harassment claim doesn't justify back pay.  One

9    doesn't get back pay simply because one was exposed to severe,

10   pervasive and offensive conduct.  She has to establish some

11   direct damage.  That's the emotional distress award.

12          The retaliation claim we believe is particularly

13   susceptible to being reversed on appeal because the evidence on

14   the complaints was remote in time from her actual termination.

15   The individual to whom the complaints were made was not a

16   decision maker.  These issues could result in the, the

17   Appellate Division concluding that while there may have been

18   harassment, that is an issue for the Division and they might

19   defer to the Division's discretion on that.

20          As a matter of law, a complaint that's remote in time

21   to the adverse action, the termination decision, is not

22   retaliation.  There's no tempo of proximity.  That is an issue

23   the Appellate Division will have to address.  If they conclude

24   that the retaliation claim is legally invalid, there's no back

25   pay award whatsoever and that, that, that makes an enormous

1   difference in the total amount of the award.

2          So for all of those reasons we think that there is,

3   there is a chance that the appeal will be successful and that

4   L.I.F.T. will be exonerated and Mr. Cordani will be exonerated.

5   And that even if not, that the award will be substantially less

6   than what the Claimant is, is seeking.

7          And for those reasons we feel that a $300,000

8   settlement is more than sufficient to address any viable claims

9   that she might have and it's a reasonable settlement under the

10  circumstances.

11         THE COURT:  All right.  Anyone else wish to be heard?

12  All right.

13         MISS MASON:  Your Honor, the law is very clear.  I am

14  a secured creditor.  The Trustee has previously recognized it

15  as such and I can provide fifteen cases that state that I am.

16         THE COURT:  We're not here to discuss your fees.

17         MISS MASON:  Okay.  I just want to address that point.

18  I, I, I understand that.

19         The second point is that in terms of the merits of

20  this case, I have provided Your Honor with a copy of that

21  decision that Your Honor previously read and reviewed as did

22  the U.S. Trustee and found that it was a very strong case as

23  you perceived it and as the U.S. Trustees perceived it and as I

24  have perceived it and the head of the Division of Human Rights

25  has perceived it.

1          My client was sexually harassed by a co-worker and she

2    complained not once, not twice --

3          THE COURT:  Well, how, how about some of the issues

4    now being raised that would come up before the Division should

5    it have to have a hearing?

6          MISS MASON:  I'm, I'm -- Those issues being that

7    there are no merits to their appeal.  I have already drafted

8    the reply brief.  I have already pulled the law.  I have every

9    single point that they raised, I have law showing there's no

10   basis for it.  Statutory fees for instance, okay, statutory

11   interest, there is Court of Appeal law that says it was an

12   abuse of discretion not to award statutory interest.  There's

13   not a single case  on the books that supports vacating

14   statutory interest.  Not a single one that would, that in this

15   situation would ever be --

16         THE COURT:  How about mitigation?

17         MISS MASON:  I'm glad you brought up that up, Your

18   Honor, because on Page 20 of the Division's decision, which is

19   Exhibit B, the Division fully addresses her mitigation efforts.

20   In fact, she mitigated more than $200,000 worth of salary in

21   her mitigation efforts.  She was constantly e-mailing, reading

22   the paper, contacting friends.  On three separate occasions

23   because of her mitigation efforts she got jobs, temporary jobs,

24   jobs through colleagues of hers, through friends, through the

25   State.  So she mitigated and the law is very clear that unless

1    you --

2              THE COURT:  Has there been a determination as to that

3    issue?

4              MISS MASON:  By the Division of Human Rights there has

5    been that she mitigated.  And the law is clear, that unless

6    you, if you remove yourself from the job market, which she did

7    not do, okay, if you reject a job offer, which she did not do,

8    and, and if you take a different position outside of your area

9    of expertise, which she did not do, those are where you show

10   failure to mitigate.  So the --

11             If you look at Page 20 through 24 and then even

12   further in terms of the law, it's very clear that she

13   mitigated.  And she mitigated so well that she reduced her back

14   pay damages by more than $200,000.

15             I'm the attorney who was present at the hearing and I

16   handled this hearing.  Counsel was not there.  Former Counsel

17   for L.I.F.T. was discharged and this Counsel came in long after

18   the hearing was over.  So I'm the attorney who knows the

19   evidence that was presented in favor of the Plaintiff showing

20   sexual harassment, showing retaliation.

21             THE COURT:  I'm sure there is a record that --

22             MISS MASON:  There is and it, it's this long and it's

23   before the Appellate Court.

24             And, furthermore, I would like to point out that if

25   L.I.F.T. is so certain that it's going to receive zero, you

1  know, as a, as a Judgement, then L.I.F.T. should be all for our

2  going back to the Appellate Court on appeal because frankly

3  L.I.F.T. does have everything to lose.  It's going to.  It's

4  looking at a $700,000 judgement against it.  That's why

5  L.I.F.T. wants to compromise this claim for less than half of

6  its value.

7      And I need just to emphasize, Your Honor, the two most

8  important entities that are relevant to this Court's decision,

9  i.e. the interest of the, the, the creditors and the debtor are

10  vehemently opposed to this compromise.

11      THE COURT:  All right.  I hear that.  Thank you.

12      MISS MASON:  Thank you, Your Honor.

13      THE COURT:  Where is the Trustee?  Did you want to

14  respond to her?

15      MR. WENGER  I would like to address some of these

16  comments --

17      THE COURT:  Yes.

18      MR. WENGER  -- if I may briefly, Your Honor.

19      THE COURT:  Go ahead.

20      MR. WENGER  There is a record.  We've examined the

21  record very closely and we've made that the basis for our

22  appeal.

23      On the issue of mitigation for example, if she's

24  mitigated her damages, she should not continue to receive a

25  back pay award and yet the Division of Human Rights, contrary

1   to the evidence in the record we believe, allowed her back pay

2   award to continue to run after she obtained what was described

3   as temporary employment.  She has some self-employment, she

4   received some income, she had project based employment, she had

5   temporary employment.  She had lengthy periods of unemployment

6   during which she was making no efforts to find other work.  And

7   throughout that entire period of time, for almost eight and a

8   half years, the Division of Human Rights continued to run the

9   clock on her back pay award.

10          It's our view that the case law is clear.  That record

11   will not justify a back pay award.

12          We also believe on the issue of statutory interest,

13   for example, we're not contesting the issue of applying

14   interest to an Order.  That goes without saying.  What we're

15   contesting on the appeal and what we believe we have good

16   grounds to reverse is the date of approval.  The date of

17   approval selected by the Division of Human Rights is some time

18   in 2000 and because of the delay of the Division of Human

19   Rights and frankly the delay caused by the Debtor's failure to

20   list the asset on her schedule, L.I.F.T. should not be assessed

21   nine percent interest during that entire time period.  There is

22   ample case law on that issue.

23          So I think that that warrants the Court's

24   consideration and the --  I stand by my representation that the

25   award, even if they're successful on the merits, would be

1    substantially reduced from what it is.

2            Thank you.

3            THE COURT:  All right.  I'll hear from the Trustee.

4            MR. BARNARD:  Your Honor --

5            THE COURT:  Identify yourself.

6            MR. BARNARD:  Yes.  R. Kenneth Barnard, Chapter 7

7    Trustee.

8            Your Honor, this is a ten year old case.  At some

9    point this needs to come to a conclusion.  We, we are looking

10   at a situation where we have a substantial offer.  We have a

11   Defendant represented well by Counsel who has presented a

12   variety of very good defenses with respect to the merits of the

13   claim.

14           We have a situation where we, where our ultimate

15   reward may be no better than the settlement being offered at

16   the moment.

17           We have a situation where we certainly could lose on

18   appeal and end up with nothing after ten years.

19           From the fiduciary standpoint as to the creditors,

20   it's one hundred percent recovery so shall I turn that down and

21   roll the dice instead on the possibility of, of a, a better

22   recovery that increases the surplus?

23           In terms of how the money is ultimately divided, Your

24   Honor has control over that.  Your Honor has control over what

25   fees are going to be awarded here and how the money is

1    ultimately going to be divided and it appears to me from, from

2    the, from the numbers that there will be a substantial surplus

3    to the Debtor here and that's a good thing, I think.

4         We have, as Mr., Mr. Pergament said before, negotiated

5    hard.  They didn't volunteer $300,000, Your Honor.  Your Honor,

6    these --  After substantial negotiations we have gotten to what

7    appears to me to be a very reasonable number under the

8    circumstances and in the face of this litigation.  And as I see

9    the litigation, this could go on many, many more years.  We --

10   The appeal hasn't been argued yet.  It could be remanded for

11   further hearings.  We could find ourselves standing here three,

12   four years from now once again.

13        So, again, given a reasonable recovery, a reasonable

14   surplus to the Debtor, she will get her opportunity for a fresh

15   start.  Her, her creditors will be paid.  She will leave here

16   with some surplus money.  She gets her fresh start.  It seems

17   to me that that's the best outcome that could be achieved under

18   the circumstances and, again, Your Honor, we've given this

19   substantial time.

20        We were here five years ago.  Shall we come back in

21   another five years?  It, it --  We reach a point, Your Honor,

22   where the distribution to creditors will, will be meaningless

23   and will be so far from the event.

24        So at this point I recommend that the Court accept the

25   settlement.

1       THE COURT:  I, I take it that's your genuine business

2   decision?

3       MR. BARNARD:  Yes, Your Honor.  Yes, Your Honor.

4   Given the defenses that are being presented, the posture of the

5   case, the potential recovery to the unsecured creditors and the

6   potential realitible surplus to the Debtor, I think it is a

7   reasonable business decision to recommend that the settlement

8   go forward.

9       THE COURT:  All right.  Is, is this timely?  In other

10  words, is there still an opportunity to oppose it in the State,

11  in the Appellate Division?

12      MR. BARNARD:  Yes.  My understanding is that the

13  Defendant has filed their brief and that if it is not approved

14  today, what will happen next is brief will be submitted on

15  behalf of the Plaintiff, the appeal will be argued and then

16  whatever will flow from that.

17      THE COURT:  So it's timely.  It's not --

18      MR. BARNARD:  Correct.

19      THE COURT:  It's not out of time.

20      MR. BARNARD:  Correct.

21      THE COURT:  And one more question to you, Sir.

22      MR. BARNARD:  Yes.

23      THE COURT:  I notice in your papers that you have

24  indicated that at most the recovery would be approximately

25  $493,000 or $500,000.

```
 1        MR. BARNARD:  We, we had a different calculation with
 2   respect to the interest than they, than they did.  We --  I, I
 3   --  You know, we've read the papers and it's just a difference
 4   of opinion.  And Mr. Blansky can explain the calculation much
 5   clearer than I.
 6        THE COURT:  Well, I would like to know what you think
 7   the ultimate, at best what it might be.  Does anyone have that
 8   --
 9        MR. BARNARD:  The best case scenario.
10        THE COURT:  The best case scenario so I'll know what
11   the settlement is against what is possible.
12        MR. BLANSKY:  Your Honor, I believe we, that
13   calculation came from using the final Order --
14        THE COURT:  Yes.
15        MR. BLANSKY:  -- from April of '07 and then we did the
16   calculation using the nine percent from that date forward and
17   that's how we got the, got the number as to the date of the
18   papers.
19        THE COURT:  All right.
20        MR. BLANSKY:  As close to I think the, the 2000 or
21   2004 calculation that I think you've heard discussed or put
22   into various calculations.  That why we have a smaller --
23        THE COURT:  Well, is there any, is there any support
24   for a $700,000 claim?
25        MR. BARNARD:  Your Honor, I've heard the defenses that
```

1    are presented.  It seems to me they, you know, the defenses

2    have merit in that respect.  The $700,000 number doesn't seem

3    like a true number to me from my reading, in my, in my opinion

4    from my reading of the documents.

5              THE COURT:  All right.  All right.

6              MR. PERGAMENT:  Your Honor, if I may just --

7              THE COURT:  Yes.

8              MR. PERGAMENT:  I'm sorry, Your Honor.  I just want to

9    clarify two points.

10             Number one, Your Honor, with respect to the Appellate

11   Division, you asked about timeliness.

12             THE COURT:  Right.

13             MR. PERGAMENT:  Just so Your Honor is aware of the, of

14   the process in the Appellate Division, once the appeal is fully

15   briefed it then is about six or eight months from now will be

16   placed on the Appellate Division calendar.  The Appellate

17   Division right now in the Second Department is rendering

18   decisions twelve to eighteen months from whence on its calendar

19   which means we're talking about roughly two years from now and

20   that's assuming, Your Honor, that, of course, there's not a

21   reversal or a remand.

22             Number two, Your Honor, an issue that Mr. Barnard

23   eluded to but be clear, the other factor here in the settlement

24   was not just we believe $700,000 is out of whack because the

25   issue of collectability which Mr. Blansky and I and Mr. Herbst

1     and I and, of course, with the Trustee spent a lot of time,

2     Your Honor, where they had to make a judgement, the judgement

3     that I had made, that collectability is really an issue here.

4         And here we are insuring that the creditors get one

5     hundred cents on a dollar.  Your Honor, that is an important

6     consideration.  When you act as Trustee you always run the risk

7     of collectability when you're in any lawsuit.  And here

8     especially in talking about deminimus which, obviously, is not

9     an entity that has a lot of hard assets for the benefit of

10    creditors.  And thus the settlement I believe is in the

11    interest of the Estate which would be the unsecured creditors

12    and, of course, that's the business judgement to Mr. Barnard

13    who is a very experienced Trustee and represented by very

14    experienced bankruptcy and Trustee Counsel.

15        And I ask Your Honor to grant the motion in its

16    entirety.

17        THE COURT:  All right.  Did you have something you

18    wanted to --

19        MISS MASON:  In response, Your Honor.

20        THE COURT:  Yes.

21        MISS MASON:  Thank you.  I think it's noteworthy to

22    the Court to see exactly the basis upon which the Trustee is

23    asking the Court to compromise a damage award by more than

24    $400,000 worth of that award.

25        The Trustee has not provided any statement regarding

```
 1    the accrued interest in its papers.

 2            I have provided detailed calculations and they're very

 3    simple and I provided that to Your Honor as Exhibit A.  The

 4    Trustee has not demonstrate that Exhibit A's numbers are

 5    incorrect.

 6            THE COURT:  Well, would it matter if it were $1

 7    million but it was attempted to be settled and the settlement

 8    might be in the best interest of creditors?

 9            MISS MASON:  The settlement is not in the best

10    interest certainly of me because you're compromising my claim

11    from $300,000 to $100,000.  So I would be losing over

12    two-thirds of my legal fees.  So I would be seriously damaged

13    by this compromise.  And I as the State's largest secured

14    creditor have the largest interest here at stake in addition to

15    which I submitted to Your Honor forty-nine points demonstrating

16    that this compromise fails to satisfy the Supreme Court and the

17    Second Circuit Court's test as to whether it's reasonable or

18    not.  I itemized each of these seven points in my objections

19    and I would ask Your Honor to review my objections to see that

20    there is no reasonableness to this proposed offer.

21            The, the Trustee has failed to satisfy his burden.  It

22    was his burden to demonstrate that it's fair and reasonable and

23    in the best interest of the creditors.  And I, as the creditor,

24    say it's not in my best interest.

25            The Debtor has said it's not in her best interest.
```

1      So because of what's been submitted and argued,

2  there's no basis to conclude that it's in the best interest of

3  this Estate.

4      THE COURT:  Thank you.  Mr. DiMino, did you wish to be

5  heard?

6      MR. DiMINO:  Thank you, Judge.  Alfred DiMino for the

7  Office of the United States Trustee.

8      As the Court recalled, we were here once before on a

9  potential settlement of about half the amount that's being

10  offered today.  At that time in that status of the case back

11  then was the pending determination of whether or not the Debtor

12  would even be able to continue with his claim because it hadn't

13  been listed as an asset on her bankruptcy case.

14      And obviously since then the decision has been made

15  that the Trustee could be substituted in and, and, and go

16  forward.  And there was a determination in terms of the

17  underlying causes of action.

18      But the case remains in flux.  There is still an

19  appeal.  The appeal now is rather than from the procedural

20  aspect of whether or not the case should be dismissed because

21  of an improper Plaintiff.  We now have the merits going up on

22  appeal and that has not been determined.

23      The, the two issues that I, that I see, and I do

24  appreciate Counsel's arguments because there are some economics

25  involved for everyone that would be somewhat compromised by the

1   approval of, of the settlement.

2          But the two things that exist today that are at least

3   to some extent more clear is that the Court has to determine

4   whether or not, one, the amount is reasonable given the overall

5   claims, whether or not the Trustee is exercising his business

6   judgement appropriately.

7          And, and the two major issues are, one, there is risk

8   inherent with any appeal.  There's a risk of a loss by the, by

9   the, the party in terms of, of the party who obtained the

10  Judgement is a risk that that Judgement could be overturned.

11  There's a risk that that Judgement could be reduced.

12          Secondly, there's a risk of collectability.  I have no

13  reason to doubt the Trustees conclusion that collectability may

14  have some issues.  I won't say I know all of the financial

15  circumstances of the Defendants but there is a concern and the

16  Trustee has to take that into consideration when determining

17  whether or not a settlement is reasonable.

18          So at, at this point it appears that the Court could

19  find that the Trustee is exercising his, his judgement

20  appropriately based upon those two issues.

21          It would be, it would be obviously preferable to

22  everyone if the entire amount was sustained, that, that

23  everybody gets paid, everybody goes home, everybody gets their

24  money but that may not be the case.

25          So at this point, and I'll, and I'll just take this in

1   terms of the, of, of the bankruptcy case itself, the Trustee's
2   obligation is to maximize the benefit, maximize the recovery
3   for the benefit of creditors.  In this case we have a $40,000,
4   approximately $40,000 unsecured creditor pool.  Based upon my
5   understanding if the Court was to approve the $300,000
6   settlement, that those creditors would be paid one hundred
7   cents on the dollar.  That is what the Trustee is here seeking
8   to protect.
9          The only other alternative would be for someone, and,
10  and we discussed this numerous years ago, of coming in and
11  saying, I'll pay them, let me go forward, then there's no risk
12  to the creditors.  That hasn't taken place nor it appears could
13  take place.
14         So the Court is left in the inevitable position to, in
15  essence, determine whether or not the settlement which would,
16  assuming that the Plaintiff was fully successful under all of
17  the theories, receive a much reduced surplus from the Estate.
18  It appears at this point, at least from, from my consideration,
19  that the risk of appeal and the risk of collectability are
20  sufficient to get the Trustee over the hurdle in terms of
21  business Judgement in, in accepting the settlement.
22         THE COURT:  All right.
23         MR. DiMINO:  Thank you, Judge.
24         THE COURT:  All right.  I'll hear you.
25         MISS MASON:  Thank you, Your Honor.

```
 1          I, I listened very carefully to the Trustee's
 2    statements and I would like to address those statements for
 3    Your Honor.
 4          In the first instance in terms of the merits of the
 5    appeal, the Trustee and L.I.S.T. Counsel had every opportunity
 6    to present this Court with law to support their position.  They
 7    have not.  And the reason they have not is because I have
 8    plenty of law to demonstrate that this case will win on appeal.
 9    All right.  There's not a single fact that they can point to
10    that demonstrates that this case has any weakness.
11          So in terms of the merits on the appeal, we are at the
12    tail end of the process.  I'm going to be submitting my brief,
13    which I have already written, in five days.  This is --
14          THE COURT:  You're, you're, you're telling the Court
15    that there is no risk.
16          MISS MASON:  I am telling the Court that the risk is
17    deminimous compared to the gain.  I have a huge amount of
18    attorney's fees that is being potentially compromised,
19    seriously compromised and I'm the one who is saying, I'm the
20    one who is saying I'm willing to take that risk.
21          The, the Trustee is supposed to be looking out for my
22    interests and he's not.  And he's supposed to be looking out
23    for, you know, the interests of the Debtor and he's not.
24          So in terms of that, if I'm the one who is willing to
25    say, I'm willing to take that risk and I'm the one who has the
```

```
 1   most knowledge, personal knowledge as to the merits of that
 2   risk because Your Honor appointed me as the person to be
 3   responsible for that, as being the expert in that, it should
 4   be, it should fall on my shoulders to be able to say I reject
 5   this, it's not fair.
 6              And as far as collectability, we're not dealing with
 7   an organization that is going to be looking at bankruptcy nor
 8   can this organization discharge this debt in bankruptcy because
 9   it's protected from being discharged.
10              THE COURT:  That doesn't apply here.  It's only --
11   The reference you're making applies to a Debtor, not to a
12   creditor or a Judgment creditor.
13              MISS MASON:  The, the reason why I make that point is
14   because they have said, oh, well, if we're found guilty, we'll
15   file for, for bankruptcy.
16              Okay.  So suffice it to say they have made $2 million
17   last year and the year --
18              THE COURT:  And how much did they expend?
19              MISS MASON:  After putting, after taking care of this
20   award, after putting it on their books, they had money left
21   over.  They have scheduled this debt on their books.
22              THE COURT:  Thank you.
23              MISS MASON:  So it's taking into account --
24              THE COURT:  Is there anything else?
25              MISS MASON:  No, Your Honor.
```

```
 1            THE COURT:  All right.  Last call.  Anyone have
 2    anything they want to add?  All right.
 3            It's unfortunate that the claim here is really being
 4    raised on behalf of the Debtor and it's Counsel.
 5            However, what is before the Court is only a
 6    determination to be made as to whether this at the lowest level
 7    of reasonableness in the compromise.
 8            It's the same standard I used before when I didn't
 9    think it was appropriate.  But in this case I, I do.
10            I believe that there is an inherent risk in the
11    appeal.  There is a risk that there will be very little to
12    compensate the Trustee in this case on behalf of the Debtor.
13    There is substantial delay ahead which diminishes any recovery
14    to anyone until it is ultimately decided.  There is no evidence
15    that it is fully collectible if it were to be obtained.
16            And most important I have to give credit to a
17    Trustee's business judgement after reviewing all of the issues
18    placed before him and therefore I must determine that the
19    Trustee's motion to be granted.  Settle an Order.
20            MR. PERGAMENT:  Thank you, Your Honor.
21            MS. SCHNEIDER:  For $40,000?
22            THE COURT:  It's $300,000.
23            MS. SCHNEIDER:  (Crying).  You --  I can't believe it.
24    You (inaudible).  I hope you're happy.  You are unfair.  You
25    came after.
```

1          THE COURT:  I'll take a five minute break and then

2     I'll resume the calendar.

3          MS. SCHNEIDER:  Seventeen years.

4        (Whereupon these proceedings were concluded at 11:30 a.m.)

5     [11:30:41]

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            C E R T I F I C A T I O N

2

3   I, Jodi Kanestrin, certify that the foregoing transcript is a

4   true and accurate record of the proceedings.

5

6

7

8

9   _____

10            JODI KANESTRIN

11

12  ADL Transcription Services, Inc.

13  24 Crossway Drive

14  Deer Park, New York  11729

15

16  Date:      December 12, 2013

17

18

19

20

21

22

23

24

25

**< Dates >**
**December 10, 2013** 1:16
**December 12, 2013** 51:16
**may.** 20:7
**$1** 43:6
**$1,500** 11:10
**$100,000** 26:25
**$100,000.** 22:22, 23:21, 43:11
**$150,000** 5:20, 19:18
**$17,000.** 23:23
**$18,000.** 10:24
**$2** 19:13, 48:16
**$200,000** 33:20, 34:14
**$234,000.** 11:25
**$28,000.** 7:2
**$300,000** 12:2, 17:7, 17:13, 22:21, 23:20, 23:22, 26:15, 32:7, 38:5, 43:11, 46:5
**$300,000.** 16:25, 17:8, 22:21, 26:5, 49:22
**$40,000** 11:5, 11:8, 11:12, 15:15, 17:16, 46:3, 46:4, 49:21
**$40,000.** 11:7
**$400,000** 28:22, 42:24
**$400,000.** 31:5
**$42,000** 11:8
**$493,000** 39:25
**$500,000.** 39:25
**$70,000** 23:17
**$70,000.** 8:7, 12:2
**$700,000** 17:22, 25:21, 35:4, 40:24, 41:2, 41:24
**$700,000.** 12:9, 14:23, 22:22
**$75,000** 7:1, 25:20, 30:21
**'07** 40:15
**.O.** 5:2

**< 0 >**
**04-85727** 1:3

**< 1 >**
**10166** 2:5
**10:21** 1:17
**11/08/2013** 3:8
**11530** 2:17
**11722** 1:14, 2:22
**11729** 51:14

**11793** 2:12
**11:30** 50:4
**13.** 11:4
**16th** 9:24
**17th** 2:5
**1996** 29:16
**1997.** 29:16

**< 2 >**
**20** 33:18, 34:11
**200** 2:5
**2000** 36:18, 40:20
**2000.** 16:8, 30:3
**2004** 10:3, 40:21
**2004.** 30:4
**2007** 7:5
**2008** 16:9
**2009** 8:8
**2010.** 13:25
**2011** 19:5, 19:9, 19:12
**2012** 19:6
**2012.** 13:7
**207** 2:13
**212-319-9092** 2:6
**226** 2:23
**24** 34:11, 51:13
**25th** 9:23
**290** 1:13

**< 3 >**
**3305** 2:12
**341** 24:16, 24:20, 24:23

**< 4 >**
**400** 2:17
**475.** 16:1

**< 5 >**
**516-826-6500** 2:13
**516-877-2424** 2:18
**560** 2:22

**< 6 >**
**631-715-7800** 2:23

**< 7 >**
**7** 3:6, 37:6

**< 9 >**
**9019(a** 3:4
**[10:21:38]** 4:2
**[11:30:41]** 50:5
**[94]** 3:8

**< A >**
**A.** 2:4, 2:15, 3:7, 43:3
**a.m.** 1:17, 50:4
**ability** 18:22
**able** 21:15, 44:12, 48:4
**above** 19:4
**abuse** 33:12
**accept** 38:24
**accepting** 46:21
**account** 8:2, 25:20, 48:23
**accountable** 21:23, 22:1
**accounting** 19:17
**accrued** 43:1
**accrues** 14:19
**accruing** 19:21
**accurate** 51:4
**achieved** 38:17
**acknowledged** 8:20
**act** 20:21, 42:6
**action** 31:21, 44:17
**actual** 31:14
**actually** 9:8, 11:9, 15:18, 25:22
**add** 12:3, 49:2
**addition** 17:13, 19:13, 26:10, 43:14
**address** 17:9, 22:10, 31:23, 32:8, 32:17, 35:15, 47:2
**addressed** 11:10, 18:17, 30:14
**addresses** 33:19
**ADL** 51:12
**administer** 6:5
**Administrative** 4:11, 7:11, 8:6, 9:14, 11:3, 12:1, 22:23, 22:24, 25:15, 25:16, 26:2, 26:4, 30:11
**administrator** 17:9, 17:23
**adverse** 31:21
**affirmance** 26:8

**affirms** 25:15
**afford** 20:19
**agencies** 25:9
**agency** 25:15, 25:16
**ago** 5:15, 5:19, 6:25, 17:20, 24:20, 38:20, 46:10
**agreed** 23:3, 26:16
**ahead** 35:19, 49:13
**Alfred** 2:20, 5:10, 44:6
**All-in-all** 31:3
**allow** 6:5, 17:18
**allowed** 14:18, 36:1
**almost** 30:4, 36:7
**already** 13:2, 13:13, 18:9, 18:17, 18:20, 33:7, 33:8, 47:13
**alternative** 46:9
**amendment** 11:9
**among** 8:3, 29:1
**amount** 6:25, 8:6, 9:14, 15:15, 22:19, 26:17, 26:23, 30:24, 32:1, 44:9, 45:4, 45:22, 47:17
**ample** 36:22
**annuity** 28:15
**answer** 12:25, 16:20, 21:5, 24:4, 24:13, 24:21, 26:22
**anybody** 21:11, 27:3
**apologize** 21:14
**apologized** 21:8
**apparently** 28:2, 30:12
**Appeal** 13:5, 13:6, 13:7, 13:12, 14:5, 14:21, 18:13, 25:2, 27:19, 28:5, 28:12, 28:13, 29:10, 29:12, 29:21, 31:1, 31:13, 32:3, 33:7, 33:11, 35:2, 35:22, 36:15, 37:18, 38:10, 39:15, 41:14, 44:19, 44:22, 45:8, 46:19, 47:5, 47:8, 47:11, 49:11
**Appeals** 25:3, 25:4, 25:16
**appearances** 4:8
**appearing** 4:10, 4:19, 11:23
**appears** 38:1, 38:7, 45:18, 46:12, 46:18
**Appellate** 13:2, 13:20, 13:24, 18:16, 22:12, 22:14, 23:2, 25:14, 25:25, 26:7, 28:1, 28:4, 29:22, 30:14, 31:17, 31:23, 34:23, 35:2, 39:11,

41:10, 41:14, 41:16
**application** 20:14, 27:8, 27:9
**applies** 48:11
**apply** 48:10
**applying** 36:13
**appoint** 17:20
**appointed** 4:12, 48:2
**appreciate** 44:24
**appropriate** 9:1, 9:3, 10:17, 49:9
**appropriately** 10:15, 45:6, 45:20
**Approval** 3:4, 5:4, 5:17, 7:21, 7:22, 9:16, 10:14, 36:16, 36:17, 45:1
**approve** 16:16, 17:4, 25:14, 27:9, 46:5
**approved** 23:21, 39:13
**approves** 9:10
**Approximately** 5:18, 9:23, 11:7, 12:9, 14:12, 14:23, 16:25, 23:23, 39:24, 46:4
**April** 7:5, 8:7, 40:15
**area** 34:8
**argued** 38:10, 39:15, 44:1
**arguing** 15:16
**argument** 10:1, 15:19, 18:10, 18:16, 18:21, 24:25
**arguments** 27:7, 44:24
**arising** 9:6
**arrive** 12:10, 12:16
**arrived** 12:19
**arriving** 9:22
**aside** 23:11, 29:13
**asks** 20:22, 24:17
**aspect** 44:20
**asserted** 28:13
**assess** 13:22, 14:15
**assessed** 30:6, 36:20
**assessment** 7:18, 14:8
**asset** 20:18, 20:25, 21:1, 21:2, 24:14, 30:11, 36:20, 44:13
**assets** 20:24, 24:6, 25:6, 25:7, 42:9
**assortment** 10:19
**assuming** 41:20, 46:16
**attempted** 43:7
**attention** 6:7
**Attorney** 2:20, 4:9, 11:23, 15:23, 15:24, 20:19, 21:6,

21:7, 27:20, 34:15, 34:18, 47:18
**attorneys** 16:9
**available** 25:6
**Avenue** 2:5, 2:12
**awarded** 29:7, 30:21, 37:25
**awards** 29:12
**aware** 23:22, 24:8, 25:24, 41:13
**awash** 26:19
**away** 21:11, 31:5


< B >
**B.** 13:17
**Back** 5:16, 6:3, 13:25, 16:8, 21:24, 26:16, 26:18, 26:24, 29:1, 29:7, 29:8, 29:15, 29:16, 29:23, 31:8, 31:9, 31:24, 34:13, 35:2, 35:25, 36:1, 36:9, 36:11, 38:20, 44:10
**balance** 17:25
**Bank** 10:23, 25:20, 26:19, 26:23
**Bankruptcy** 1:1, 1:12, 3:4, 6:18, 16:2, 17:4, 21:12, 24:4, 42:14, 44:13, 46:1, 48:7, 48:8, 48:15
**Barnard** 3:5, 3:8, 4:20, 4:21, 6:7, 6:14, 7:19, 7:20, 23:2, 23:11, 23:15, 24:21, 26:6, 26:9, 37:4, 37:6, 39:3, 39:12, 39:18, 39:20, 39:22, 40:1, 40:9, 40:25, 41:22, 42:12
**Based** 18:15, 18:16, 19:2, 27:5, 36:4, 45:20, 46:4
**basically** 27:1, 30:18
**basis** 33:10, 35:21, 42:22, 44:2
**become** 7:7
**beginning** 26:15
**behalf** 3:7, 4:19, 15:17, 18:4, 22:9, 24:19, 39:15, 49:4, 49:12
**believe** 8:7, 9:22, 10:19, 11:8, 14:6, 15:16, 22:15, 23:18, 27:8, 29:21, 30:1, 30:5, 30:13, 30:22, 31:6, 31:12, 36:1, 36:12, 36:15, 40:12, 41:24, 42:10, 49:10, 49:23
**bench** 14:1
**benefit** 5:25, 6:16, 7:7, 8:21,

10:9, 10:12, 15:10, 15:20, 42:9, 46:2, 46:3
**benefiting** 30:12
**benefits** 17:14
**best** 13:22, 14:7, 14:14, 19:20, 38:17, 40:7, 40:9, 40:10, 43:8, 43:9, 43:23, 43:24, 43:25, 44:2
**better** 20:1, 37:15, 37:21
**bill** 8:11
**bit** 6:3
**Blansky** 2:10, 3:7, 4:18, 4:19, 5:14, 10:19, 10:22, 11:8, 11:12, 11:16, 22:25, 40:4, 40:12, 40:15, 40:20, 41:25
**body** 10:8
**bond** 14:22, 14:25, 25:3
**books** 19:16, 19:17, 19:18, 33:13, 48:20, 48:21
**bottom** 19:24
**break** 50:1
**brief** 13:25, 18:16, 23:2, 23:4, 23:8, 29:24, 33:8, 39:13, 39:14, 47:12
**briefed** 41:15
**briefing** 9:21
**briefly** 35:18
**bring** 10:7
**brings** 27:1
**brought** 6:7, 33:17
**burden** 43:21, 43:22
**business** 6:15, 10:15, 39:1, 39:7, 42:12, 45:5, 46:21, 49:17


< C >
**calculation** 31:1, 40:1, 40:4, 40:13, 40:16, 40:21
**calculations** 9:23, 30:1, 40:22, 43:2
**calendar** 41:16, 41:18, 50:2
**call** 25:10, 49:1
**called** 15:22, 22:23
**candidate** 29:13
**capability** 5:20, 28:7
**capacity** 7:20, 28:7
**Capital** 10:25
**card** 11:1
**cards** 11:1

**care** 48:19
**career** 14:13
**carefully** 47:1
**Carl** 4:5
**Carol** 1:7, 2:8, 4:3
**Case** 1:3, 6:4, 6:8, 7:19, 8:17, 9:5, 10:3, 12:4, 12:5, 13:23, 14:2, 14:16, 15:25, 16:4, 16:7, 17:4, 18:12, 24:10, 28:4, 30:22, 32:20, 32:22, 33:13, 36:10, 36:22, 37:8, 39:5, 40:9, 40:10, 44:10, 44:13, 44:18, 44:20, 45:24, 46:1, 46:3, 47:8, 47:10, 49:9, 49:12
**cases** 8:4, 8:23, 16:3, 28:17, 32:15
**cash** 26:19
**caught** 24:12
**caused** 36:19
**causes** 44:17
**causing** 30:12
**Central** 1:14, 2:22
**cents** 42:5, 46:7
**certain** 25:12, 34:25
**certainly** 10:9, 29:9, 37:17, 43:10
**certify** 51:3
**chance** 32:3
**change** 11:10
**Chapter** 3:6, 11:4, 37:6
**charging** 9:7
**Circuit** 43:17
**circumstances** 6:21, 8:21, 8:22, 9:4, 10:16, 32:10, 38:8, 38:18, 45:15
**City** 2:17
**Claim** 6:5, 6:6, 7:10, 8:6, 9:5, 9:6, 9:14, 10:25, 11:9, 11:10, 11:24, 11:25, 12:1, 13:3, 15:23, 20:22, 22:14, 22:23, 22:24, 27:19, 28:2, 28:8, 28:9, 29:14, 30:11, 31:8, 31:12, 31:24, 35:5, 37:13, 40:24, 43:10, 44:12, 49:3
**Claimant** 10:23, 32:6
**claimed** 24:5, 29:2
**claiming** 29:6, 29:16
**claims** 11:3, 11:9, 15:15, 15:22, 17:9, 17:23, 17:24, 24:7,

24:15, 24:18, 31:7, 32:8,
45:5
clarify 41:9
clear 15:24, 16:3, 30:22, 32:13,
33:25, 34:5, 34:12, 36:10,
41:23, 45:3
clearer 40:5
client 7:18, 15:17, 23:3, 23:13,
23:14, 26:4, 26:17, 26:18,
33:1
clock 36:9
close 40:20
closely 35:21
co-worker 33:1
Code 16:2
colleagues 33:24
collect 13:3, 13:9, 17:19, 25:1
collectability 18:20, 18:21,
26:9, 41:25, 42:3, 42:7,
45:12, 45:13, 46:19, 48:6
collectible 49:15
college 20:25
comedy 13:9
comes 9:13, 15:10, 26:20
coming 46:10
commenced 30:4
comment 27:23, 29:21
commented 28:2
comments 27:18, 35:16
Commissioner 13:21
commissions 9:2, 23:22
compared 47:17
compensate 49:12
compensation 12:7
Compensatory 30:18
complained 29:3, 33:2
complaint 31:20
complaints 29:5, 31:14, 31:15
Compromise 3:3, 4:7, 16:2,
18:7, 35:5, 35:10, 42:23,
43:13, 43:16, 49:7
compromised 16:10, 44:25,
47:18, 47:19
compromising 43:10
concern 8:13, 45:15
concerns 5:23
conclude 29:23, 31:23, 44:2
concluded 50:4
concluding 31:17
conclusion 37:9, 45:13

conduct 31:10
conducted 24:16, 24:20
conducts 24:21
confirmed 28:11
consider 6:18
considerable 31:4
consideration 36:24, 42:6,
45:16, 46:18
considered 6:25, 16:11, 26:6,
26:9
constantly 33:21
contacting 33:22
contemplate 8:21
contemplated 8:16
contention 29:8
contesting 36:13, 36:15
context 6:13
continue 9:12, 17:18, 35:24,
36:2, 44:12
continued 9:19, 24:23, 36:8
continuing 14:19
contrary 35:25
control 37:24
Controversy 3:3
copy 32:20
Cordani 3:7, 18:4, 21:20,
27:21, 32:4
corporation 5:3
Correct 12:13, 39:18, 39:20
correctly 25:5
cost 6:1
costs 8:3
Counsel 4:13, 4:25, 7:10, 7:13,
7:16, 7:22, 9:2, 14:1, 17:21,
18:15, 22:11, 22:13, 23:2,
23:9, 23:10, 23:11, 26:3,
26:11, 26:12, 34:16, 34:17,
37:11, 42:14, 44:24, 47:5,
49:4
count 24:17
course 9:5, 9:15, 9:19, 23:24,
26:8, 41:20, 42:1, 42:12
credit 11:1, 49:16
Creditor 2:3, 4:10, 7:11, 7:12,
10:8, 14:6, 22:18, 32:14,
43:14, 43:23, 46:4, 48:12
creditors 4:12, 6:16, 6:22, 7:8,
7:14, 10:18, 10:20, 15:14,
15:20, 17:17, 17:24, 20:16,
21:16, 23:25, 25:22, 35:9,

37:19, 38:15, 38:22, 39:5,
42:4, 42:10, 42:11, 43:8,
43:23, 46:3, 46:6, 46:12
criticize 6:11
Crossway 51:13
Crying 49:23
currently 12:1


< D >
D. 13:7
damage 12:8, 18:8, 18:13,
19:17, 19:18, 31:11, 42:23
damaged 43:12
damages 13:22, 29:1, 29:6,
29:18, 29:20, 30:17, 30:18,
30:19, 31:2, 34:14, 35:24
Date 6:8, 9:24, 36:16, 40:16,
40:17, 51:16
David 2:10, 3:7, 4:18
day 8:15, 8:25, 9:13, 15:9,
25:13, 25:21
days 47:13
deadline 9:22
deal 6:13, 23:11
dealing 16:12, 48:6
dealt 23:19
debt 11:5, 11:13, 48:8, 48:21
Debtor 1:9, 2:8, 4:16, 5:24,
6:10, 7:9, 8:15, 8:17, 8:22,
9:3, 10:12, 15:11, 15:21,
17:15, 17:17, 17:25, 20:1,
20:10, 20:12, 24:21, 28:7,
28:21, 29:2, 30:5, 30:10,
35:9, 36:19, 38:3, 38:14,
39:6, 43:25, 44:11, 47:23,
48:11, 49:4, 49:12
Debtors 6:19
decided 7:17, 18:9, 20:21,
28:8, 49:14
decision 13:7, 13:8, 13:16,
14:8, 31:16, 31:21, 32:21,
33:18, 35:8, 39:2, 39:7,
44:14
decisions 41:18
deduct 17:13
Deer 51:14
default 7:6
Defendant 27:21, 37:11, 39:13
Defendants 45:15

defenses 37:12, 39:4, 40:25,
41:1
defer 31:19
definitely 28:3
delay 6:1, 30:6, 30:12, 30:13,
36:18, 36:19, 49:13
delayed 30:9
demarcation 9:17
deminimous 42:8, 47:17
demonstrate 13:19, 15:3,
43:4, 43:22, 47:8
demonstrated 18:7, 18:9,
18:20
demonstrates 47:10
demonstrating 16:3, 43:15
denied 5:21
Department 10:1, 13:24,
41:17
dependent 12:7
depending 10:9
depends 6:19
described 36:2
Despite 23:7
detailed 43:2
determination 7:21, 10:2,
28:5, 34:2, 44:11, 44:16, 49:6
determine 8:25, 16:14, 16:23,
45:3, 46:15, 49:18
determined 44:22
determining 45:16
dice 37:21
dicey 7:9
Dick 21:20
difference 32:1, 40:3
different 5:19, 8:1, 34:8, 40:1
difficult 13:18
diligence 6:11
diminishes 49:13
Dimino 2:20, 5:8, 5:9, 5:10,
44:4, 44:6, 46:23
direct 31:11
direction 23:7
directives 7:23
disagree 29:9
disbursed 8:14
discharge 48:8
discharged 34:17, 48:9
disclose 7:10
disclosed 6:6
disclosures 6:19

Discover 10:23
discretion 16:23, 31:19, 33:12
discrimination 6:5, 14:2, 14:14, 28:17
discuss 32:16
discussed 40:21, 46:10
dismissed 44:20
disregard 10:7
distress 30:18, 30:20, 30:21, 31:11
distribution 38:22
DISTRICT 1:2
divided 37:23, 38:1
dividends 27:3
Division 13:10, 13:14, 13:21, 22:12, 22:14, 23:2, 25:14, 26:8, 28:1, 28:4, 28:6, 28:10, 28:11, 29:7, 29:11, 29:20, 29:22, 30:2, 30:6, 30:15, 30:20, 31:17, 31:18, 31:19, 31:23, 32:24, 33:4, 33:18, 33:19, 34:4, 35:25, 36:8, 36:17, 36:18, 39:11, 41:11, 41:14, 41:16, 41:17
Divisions 28:15
docket 11:2
documents 26:10, 41:4
doing 23:4, 23:5, 24:12
dollar. 42:5, 46:7
donations 25:8
done 9:17
DOROTHY 1:20
double 10:5
doubt 45:13
down 5:25, 8:9, 23:19, 37:20
drafted 33:7
dragged 27:21
Drive 51:13
during 18:15, 30:7, 30:13, 30:19, 36:6, 36:21

< E >
e-mailing 33:21
earlier 11:9
early 8:9
earned 19:12
EASTERN 1:2
easy 10:16
economics 44:24

effect 16:7
effectively 25:8
efforts 33:19, 33:21, 33:23, 36:6
eight 30:5, 36:7, 41:15
eighteen 41:18
EISENBERG 1:20
either 25:8, 28:19
elements 28:25, 29:6, 30:17
Elizabeth 2:3, 2:4, 4:9, 21:16
eluded 41:23
emotional 30:18, 30:20, 30:21, 31:11
emphasize 35:7
employed 29:15
employee 29:2
employment 7:13, 14:11, 14:13, 28:16, 36:3, 36:4, 36:5
end 8:14, 8:25, 9:13, 25:13, 25:21, 37:18, 47:12
enforce 13:10
enforced 14:18, 25:3
enforcement 14:5, 14:17
enforcing 12:8
enormous 31:25
Entered 3:8, 16:7
entire 9:3, 14:4, 21:15, 36:7, 36:21, 45:22
entirely 12:7
entirety 42:16
entities 35:8
entitled 9:4, 22:19, 29:23
entity 13:14, 15:13, 42:9
equipment 25:8
equity 8:19
especially 25:25, 42:8
essence 46:15
establish 31:10
established 17:7
Estate 4:10, 4:11, 5:25, 6:16, 7:8, 9:16, 9:20, 9:22, 11:24, 15:8, 15:10, 42:11, 44:3, 46:17
estimated 8:6
etcetera 26:21
event 7:3, 8:15, 30:23, 38:23
everybody 15:12, 45:23
everyone 44:25, 45:22
everything 14:10, 35:3

evidence 29:19, 30:19, 31:13, 34:19, 36:1, 49:14
exactly 42:22
examine 29:22
examined 35:20
example 30:18, 35:23, 36:13
exceptional 7:19
excessive 30:22
excuse 17:21
exercised 10:15
exercising 6:14, 45:5, 45:19
Exhibit 12:18, 13:7, 13:17, 33:19, 43:3, 43:4
exist 17:14, 45:2
exonerated 32:4
expect 18:14
expend 48:18
expense 6:1, 9:20, 23:4
expenses 9:11, 19:4, 19:15, 23:18, 25:12, 26:20, 27:2
experienced 6:10, 42:13, 42:14
expert 26:11, 48:3
expertise 34:9
explain 22:13, 26:3, 28:23, 40:4
explained 20:18
explicit 23:7
exposed 31:9
expressly 13:8
extend 23:3
extending 23:1
extension 23:8
extent 9:10, 28:17, 45:3

< F >
face 38:8
fact 6:20, 18:21, 33:20, 47:9
factor 41:23
factors 8:3
facts 8:20, 9:4, 27:5, 27:6
failed 7:10, 29:19, 29:24, 43:21
fails 43:16
failure 34:10, 36:19
fair 43:22, 48:5
fall 48:4
familiar 18:18, 22:12
far 38:23, 48:6
fault 30:8
favor 13:2, 18:10, 34:19

Federal 1:13, 2:22, 3:3
Federation 5:1
fee 14:4, 16:24
feel 12:24, 32:7
feels 21:24
fees 9:1, 10:11, 12:2, 15:24, 15:25, 16:6, 16:9, 16:10, 16:12, 16:17, 16:22, 16:25, 17:3, 17:6, 17:10, 17:11, 23:24, 25:23, 32:16, 33:10, 37:25, 43:12, 47:18
felt 14:2
few 18:24, 19:2
fiduciary 7:20, 37:19
fifteen 32:15
figure 12:19
figures 12:11, 15:4
file 13:3, 23:1, 23:8, 48:15
filed 7:14, 9:6, 11:2, 14:23, 15:1, 16:8, 18:17, 19:3, 20:19, 39:13
filing 25:3
final 40:13
financial 26:17, 45:14
financially 26:10
find 5:16, 36:6, 38:11, 45:19
firm 23:23, 27:16
First 13:1, 22:16, 25:1, 47:4
five 5:15, 5:18, 6:25, 38:20, 38:21, 47:13, 50:1
Floor 2:5
flow 39:16
flux 44:18
follow 7:23
follows 15:21
foregoing 51:3
forgot 24:11
form 24:4, 24:15
Former 34:16
forth 12:18, 21:24, 26:16
forty-nine 43:15
Forum 2:15, 3:6, 5:1, 22:9, 25:6, 25:19, 27:16
forward 39:8, 40:16, 44:16, 46:11
found 32:22, 48:14
four 15:5, 17:19, 38:12
frankly 35:2, 36:19
fresh 24:3, 38:14, 38:16
friends 33:22, 33:24

**frustrations** 7:24
**full** 6:19, 14:20, 17:23, 17:24,
    18:22, 24:1
**fully** 15:6, 18:9, 24:8, 33:19,
    41:14, 46:16, 49:15
**fund** 19:12
**funds** 8:17, 25:11

**< G >**
**gain** 47:17
**Garden** 2:17
**General** 9:1
**generate** 15:8, 18:22
**generated** 15:3
**genesis** 6:4
**genuine** 39:1
**gets** 22:21, 25:21, 25:23, 38:16,
    45:23
**give** 9:3, 16:4, 24:6, 49:16
**Given** 22:15, 38:13, 38:18,
    39:4, 45:4
**glad** 33:17
**gobbled** 25:23
**gotten** 38:6
**government** 25:9
**Granovi** 8:20
**grant** 14:9, 27:8, 42:15
**granted** 49:19
**grants** 25:9, 25:10
**Gross** 2:16, 4:25, 26:19
**ground** 13:11
**grounds** 28:12, 36:16
**guess** 9:12, 10:2
**guilty** 48:14

**< H >**
**half** 28:20, 35:5, 36:8, 44:9
**hand** 21:2
**handled** 34:16
**handles** 15:25
**handling** 12:4
**happen** 17:19, 28:23, 39:14
**happened** 24:9, 28:1
**happens** 12:20
**happy** 28:23, 49:24
**harassed** 33:1
**harassment** 29:3, 29:14, 31:7,
    31:8, 31:18, 34:20

**hard** 25:24, 26:14, 38:5, 42:9
**head** 32:24
**hear** 4:8, 18:1, 20:12, 20:14,
    35:11, 37:3, 46:24
**heard** 11:17, 11:20, 18:1, 20:4,
    20:11, 27:10, 27:11, 32:11,
    40:21, 40:25, 44:5
**Hearing** 3:1, 6:9, 6:11, 6:14,
    23:25, 26:2, 26:4, 30:3,
    30:20, 33:5, 34:15, 34:16,
    34:18
**hearings** 38:11
**held** 21:23, 21:25
**Herbst** 2:11, 4:19, 4:22, 41:25
**hide** 21:10
**higher** 14:21
**hold** 21:1
**holding** 15:23
**home** 45:23
**honest** 6:19
**hope** 49:24
**huge** 47:17
**Human** 13:10, 13:14, 13:21,
    28:6, 28:10, 28:11, 29:7,
    29:11, 29:20, 30:2, 30:6,
    30:21, 32:24, 34:4, 35:25,
    36:8, 36:17, 36:18
**hundred** 37:20, 42:5, 46:6
**hurdle** 46:20
**hurt** 25:21
**hurts** 6:22

**< I >**
**I.** 40:5
**idea** 17:12
**Identify** 4:8, 27:13, 37:5
**ignores** 30:10
**imagine** 5:15, 9:25
**immediately** 19:22
**important** 35:8, 42:5, 49:16
**improper** 44:21
**inaudible** 9:15, 23:13, 24:9,
    49:24
**Inc.** 51:12
**incentive** 19:21
**incidents** 7:16
**income** 15:3, 18:23, 19:3, 36:4
**incorrect** 43:5
**increases** 37:22

**incur** 23:4
**incurred** 8:3, 8:10
**indicated** 39:24
**indicates** 7:11
**individual** 27:21, 28:7, 31:15
**inevitable** 46:14
**inexperienced** 26:13
**inherent** 45:8, 49:10
**initial** 16:9, 28:5
**initially** 6:6
**instance** 33:10, 47:4
**instead** 37:21
**insuring** 42:4
**integrity** 6:18
**intends** 17:12
**Interest** 7:5, 14:19, 15:8, 19:20,
    29:17, 30:1, 30:3, 30:7,
    30:13, 30:23, 33:11, 33:12,
    33:14, 35:9, 36:12, 36:14,
    36:21, 40:2, 42:11, 43:1,
    43:8, 43:10, 43:14, 43:23,
    43:24, 43:25, 44:2
**interests** 47:22, 47:23
**invalid** 31:24
**invoice** 8:11
**involved** 44:25
**Island** 2:15, 3:6, 5:1, 22:9, 25:6,
    25:19, 27:16
**Islip** 1:14, 2:22
**issue** 6:23, 13:1, 13:4, 18:8,
    18:10, 18:12, 18:19, 28:8,
    29:21, 29:22, 31:18, 31:22,
    34:3, 35:23, 36:12, 36:13,
    36:22, 41:22, 41:25, 42:3
**issues** 6:13, 13:1, 28:14, 30:14,
    30:25, 31:16, 33:3, 33:6,
    44:23, 45:7, 45:14, 45:20,
    49:17
**itemization** 12:19
**itemized** 43:18
**itself** 46:1

**< J >**
**Jackson** 27:16
**Jerusalem** 2:12
**job** 34:6, 34:7
**jobs** 33:23, 33:24
**JODI** 2:24, 51:3, 51:10
**joke** 21:24, 21:25

**Judge** 1:20, 5:9, 22:23, 44:6,
    46:23
**Judgement** 6:15, 7:4, 7:17,
    9:9, 10:15, 15:7, 15:9, 19:21,
    21:15, 25:1, 25:3, 25:18,
    35:1, 35:4, 42:2, 42:12, 45:6,
    45:10, 45:11, 45:19, 46:21,
    49:17
**Judgements** 19:19
**Judgment** 48:12
**Judiciary** 9:7, 16:1
**jurisdiction** 18:8
**justify** 31:8, 36:11

**< K >**
**KANESTRIN** 2:24, 51:3, 51:10
**Kenneth** 3:5, 3:7, 4:20, 37:6
**kind** 26:13
**knowledge** 12:24, 48:1
**knows** 34:18

**< L >**
**lack** 18:8
**Lamonica** 2:11, 4:19, 23:23
**largest** 4:10, 9:5, 10:24, 10:25,
    11:23, 43:13, 43:14
**Last** 12:5, 14:12, 15:4, 18:24,
    19:2, 20:18, 48:17, 49:1
**later** 6:7
**Law** 8:17, 9:7, 15:24, 16:1, 16:3,
    18:17, 18:18, 24:5, 24:7,
    24:11, 24:18, 27:15, 30:22,
    31:20, 32:13, 33:8, 33:9,
    33:11, 33:25, 34:5, 34:12,
    36:10, 36:22, 47:6, 47:8
**lawsuit** 42:7
**layers** 13:13
**leads** 15:16
**least** 45:2, 46:18
**leave** 29:13, 38:15
**leaves** 17:16, 17:17
**left** 19:14, 19:18, 20:17, 24:1,
    46:14, 48:20
**leftover** 10:11
**legal** 12:2, 15:24, 15:25, 16:6,
    21:5, 23:24, 43:12
**legally** 31:24
**length** 30:9

**lengthy** 36:5
**less** 26:24, 28:22, 31:5, 32:5, 35:5
**level** 49:6
**Lewis** 27:16
**liabilities** 25:12
**lien** 9:7, 16:6, 16:9
**liens** 16:22, 17:13
**life** 12:5, 21:18, 21:21, 21:25
**lift** 8:19
**light** 6:9
**lightly** 10:7
**likelihood** 8:2, 14:21, 28:18, 31:4
**likely** 27:24
**line** 9:18, 19:24
**list** 24:11, 24:14, 36:20
**listed** 44:13
**listened** 47:1
**litigating** 28:16
**litigation** 9:19, 14:12, 38:8, 38:9
**little** 5:15, 6:3, 7:8, 49:11
**LLP** 2:4, 2:11, 2:16
**loan** 19:22
**Long** 2:15, 3:6, 4:25, 5:1, 22:9, 25:6, 25:19, 27:16, 34:17, 34:22
**longer** 13:4, 19:25
**look** 34:11
**looked** 12:11
**looking** 35:4, 37:9, 47:21, 47:22, 48:7
**lose** 14:9, 14:22, 24:10, 35:3, 37:17
**losing** 43:11
**loss** 45:8
**lot** 26:3, 42:1, 42:9
**lowest** 49:6
**Lynn** 1:7, 2:8, 4:3, 4:5, 4:16


**< M >**
**magnitude** 5:20, 8:1, 10:5
**main** 12:14
**major** 45:7
**maker** 31:16
**Maniscalco** 2:11, 4:19, 23:24
**manufactured** 22:24
**Marc** 2:15, 4:24

**Mark** 27:15
**market** 34:6
**Masters** 21:1
**Matter** 1:5, 3:3, 4:3, 6:1, 23:1, 28:9, 31:20, 43:6
**matters** 26:13
**maximize** 46:2
**mean** 25:10
**meaningless** 38:22
**means** 19:24, 25:10, 26:20, 41:19
**measured** 9:8, 9:11
**Medicaid** 17:14
**medical** 30:19
**meet** 10:13, 29:19, 29:24
**meeting** 24:23
**meetings** 24:16, 24:20
**merit** 27:7, 41:2
**merits** 8:3, 13:12, 13:22, 14:8, 14:15, 14:16, 18:3, 18:7, 22:13, 23:12, 27:19, 28:2, 28:9, 28:21, 29:9, 29:13, 31:4, 31:6, 32:19, 33:7, 36:25, 37:12, 44:21, 47:4, 47:11, 48:1
**mess** 21:9
**messed** 21:7
**met** 13:19
**Mickel** 21:20
**million** 19:13, 21:8, 43:7, 48:16
**minimal** 25:6
**minute** 50:1
**mischaracterized** 29:11
**misinformation** 22:15
**misrepresentation** 24:24
**misrepresented** 24:23
**mistake** 20:18, 20:20, 22:2, 22:3, 24:13
**mistaken** 25:2
**mitigate** 19:18, 29:20, 34:10
**mitigated** 33:20, 33:25, 34:5, 34:13, 35:24
**mitigation** 29:24, 33:16, 33:19, 33:21, 33:23, 35:23
**moment** 16:7, 37:16
**Money** 10:11, 10:23, 10:25, 15:10, 19:13, 21:2, 24:1, 25:22, 26:19, 26:20, 27:2, 37:23, 37:25, 38:16, 45:24, 48:20

**month** 15:9
**months** 8:11, 41:15, 41:18
**morning** 4:18, 4:24, 5:9, 22:8
**Motion** 3:3, 4:6, 5:4, 5:13, 5:16, 7:15, 20:16, 22:11, 42:15, 49:19
**MS** 4:5, 4:16, 6:11, 7:13, 8:6, 12:4, 16:7, 20:6, 20:8, 20:15, 20:23, 22:16, 23:14, 24:2, 24:3, 49:21, 49:23, 50:3
**myself** 14:1, 14:15


**< N >**
**name** 27:15
**near** 9:24, 16:1
**need** 26:17, 35:7
**needs** 37:9
**negotiated** 26:14, 38:4
**negotiations** 38:6
**New** 1:2, 1:14, 2:5, 2:17, 2:22, 9:17, 15:25, 21:17, 51:14
**next** 10:1, 39:14
**nicer** 22:25
**Nine** 7:5, 14:19, 15:8, 19:20, 29:17, 30:7, 30:13, 36:21, 40:16
**No.** 1:3, 24:9, 24:22
**non-disclosure** 8:18
**non-for-profit** 25:7
**non-payment** 7:3
**non-profit** 14:25, 15:2
**None** 7:14
**nor** 46:12, 48:7
**Not-for-profit** 5:3, 27:1, 27:4
**noteworthy** 42:21
**nothing** 17:16, 17:17, 18:6, 25:22, 37:18
**notice** 39:23
**notwithstanding** 8:17
**Number** 5:23, 6:17, 8:9, 9:15, 12:12, 12:17, 22:23, 23:17, 25:5, 28:25, 38:7, 40:17, 41:2, 41:3, 41:10, 41:22
**numbers** 38:2, 43:4
**numerous** 16:3, 28:12, 46:10
**NY** 2:5, 2:12


**< O >**

**object** 20:15
**objection** 18:4, 20:14, 27:7
**objections** 7:9, 7:14, 43:18, 43:19
**obligation** 29:18, 29:19, 46:2
**obligations** 29:25, 30:11
**obtained** 17:15, 36:2, 45:9, 49:15
**obtaining** 14:5
**obviously** 42:8, 44:14, 45:21
**occasions** 33:22
**offensive** 31:10
**offer** 26:15, 34:7, 37:10, 43:20
**offered** 37:15, 44:10
**Office** 2:21, 5:10, 5:21, 21:5, 44:7
**Okay** 11:6, 11:11, 16:13, 16:15, 16:19, 18:2, 23:19, 32:17, 33:10, 34:7, 48:16
**old** 37:8
**once** 11:10, 20:16, 33:2, 38:12, 41:14, 44:8
**One** 4:11, 5:23, 6:17, 7:24, 10:6, 10:25, 11:8, 12:6, 12:14, 15:11, 24:17, 28:14, 29:6, 31:8, 31:9, 33:14, 37:20, 39:21, 41:10, 42:4, 45:4, 45:7, 46:6, 47:19, 47:20, 47:24, 47:25
**ones** 10:16, 10:17
**opine** 28:9
**opinion** 14:16, 28:16, 40:4, 41:3
**opportunity** 10:5, 21:13, 21:14, 38:14, 39:10, 47:5
**oppose** 12:14, 39:10
**opposed** 5:20, 23:8, 35:10
**opposition** 8:5
**oral** 18:16
**Order** 4:12, 17:20, 36:14, 40:13, 49:19
**ordered** 17:19
**organization** 15:3, 15:6, 48:7, 48:8
**original** 28:11, 28:13
**ourselves** 38:11
**outcome** 10:9, 38:17
**outside** 19:12, 34:8
**overall** 45:4
**overstated** 30:2

overturned 45:10
own 15:4

**< P >**
**Page** 13:16, 33:18, 34:11
**paid** 14:20, 15:8, 15:12, 17:23,
17:24, 19:25, 20:16, 24:1,
38:15, 45:23, 46:6
**panel** 28:1
**paper** 33:22
**papers** 8:5, 9:21, 12:18, 14:23,
17:12, 18:6, 39:23, 40:3,
40:18, 43:1
**Park** 2:5, 51:14
**part** 13:17
**partial** 8:18
**participate** 8:24
**participation** 8:18
**particularly** 31:12
**partner** 4:22
**party** 45:9
**passed** 13:13
**pay** 18:23, 19:21, 19:22, 19:24,
20:1, 21:16, 21:20, 25:20,
26:18, 26:20, 29:1, 29:7,
29:8, 29:15, 29:16, 29:23,
31:8, 31:9, 31:25, 34:14,
35:25, 36:1, 36:9, 36:11,
46:11
**paying** 15:7
**payment** 7:1
**payments** 7:2
**payroll** 26:21
**pays** 27:2
**PC** 27:16
**pending** 44:11
**penny** 12:6
**pens** 8:9
**perceived** 32:23, 32:24, 32:25
**perceives** 10:10
**percent** 7:6, 14:20, 15:8, 19:20,
29:17, 30:7, 30:13, 36:21,
37:20, 40:16
**PERGAMENT** 2:15, 2:16,
4:24, 4:25, 20:5, 20:7, 20:10,
20:13, 22:8, 38:4, 41:6, 41:8,
41:13, 49:20
**perhaps** 14:14
**period** 29:24, 36:7, 36:21

**periods** 36:5
**permitted** 13:9, 16:2
**person** 48:2
**personal** 12:24, 48:1
**pervasive** 31:10
**phonetic** 8:20, 21:20
**picture** 9:3
**place** 46:12, 46:13
**placed** 41:16, 49:18
**Plaintiff** 34:19, 39:15, 44:21,
46:16
**Plaza** 1:13, 2:17, 2:22
**plenty** 47:8
**plus** 9:11
**point** 6:11, 10:1, 15:13, 20:25,
27:24, 29:4, 32:19, 33:9,
34:24, 37:9, 38:21, 38:24,
45:18, 45:25, 46:18, 47:9,
48:13
**point.** 10:2, 16:21, 32:17
**points** 22:10, 22:16, 41:9,
43:15, 43:18
**polite** 22:25
**pool** 46:4
**portion** 17:23
**position** 13:22, 14:7, 14:14,
15:19, 26:17, 27:23, 34:8,
46:14, 47:6
**possibility** 37:21
**possible** 40:11
**possibly** 28:19
**post** 14:22, 14:24
**posture** 9:18, 9:19, 39:4
**potential** 39:5, 39:6, 44:9
**potentially** 17:14, 17:22, 47:18
**practice** 14:13
**practicing** 14:11
**pre-petition** 7:13, 9:7
**predict** 25:24
**preferable** 45:21
**present** 4:21, 5:2, 15:19, 34:15,
47:6
**presentation** 11:14
**presented** 10:4, 34:19, 37:11,
39:4, 41:1
**Presently** 11:25
**Previously** 14:23, 18:17, 28:1,
32:14, 32:21
**Primarily** 29:1
**prime** 29:13

**principal** 7:4
**principals** 13:9
**pro** 4:10, 11:23, 20:19, 20:21,
21:4
**probably** 5:14, 10:24
**problems** 26:3
**procedural** 44:19
**Procedure** 3:4
**proceed** 9:20, 12:20
**proceeding** 27:18, 30:4, 30:9
**proceedings** 27:20, 27:23,
50:4, 51:4
**process** 27:22, 41:14, 47:12
**produced** 30:19
**professional** 10:11, 14:16
**project** 36:4
**proof** 10:10
**properly** 6:14
**proposal** 14:9
**Proposed** 5:19, 7:1, 11:3,
16:17, 17:4, 17:8, 27:17,
43:20
**prosecute** 9:13
**prospective** 8:8
**protect** 17:3, 46:8
**protected** 15:25, 16:10, 16:18,
17:6, 48:9
**provide** 8:16, 17:12, 32:15
**provided** 13:16, 15:1, 19:8,
26:9, 32:20, 42:25, 43:2,
43:3
**provides** 7:3
**proximity** 31:22
**public** 15:2, 26:10, 27:2
**pulled** 33:8
**purpose** 6:8, 6:9
**purposely** 24:9
**purposes** 25:11
**Pursuant** 3:3, 4:12, 13:8, 17:20
**pursue** 24:6, 24:18, 24:19,
25:17, 28:7
**pursued** 6:2
**pursuing** 6:12
**put** 19:5, 19:16, 23:11, 40:21
**puts** 7:21
**putting** 6:15, 48:19, 48:20

**< Q >**
**quarterly** 7:2

**question** 12:23, 12:25, 20:22,
24:4, 24:13, 24:20, 26:22,
39:21
**questions** 7:7, 21:5, 21:7,
24:17

**< R >**
**R.** 3:5, 3:7, 4:20, 37:6
**raised** 31:1, 33:4, 33:9, 49:4
**ran** 30:2
**rate** 14:19
**rather** 44:19
**re** 3:1
**re-opened** 6:4, 6:8
**reach** 9:12, 38:21
**reached** 8:7, 8:8
**read** 13:25, 32:21, 40:3
**reading** 33:21, 41:3, 41:4
**real** 27:7
**realitible** 39:6
**really** 21:10, 21:21, 26:22, 27:6,
42:3, 49:3
**reason** 15:21, 18:14, 45:13,
47:7, 48:13
**reasonable** 16:24, 32:9, 38:7,
38:13, 39:7, 43:17, 43:22,
45:4, 45:17
**reasonableness** 43:20, 49:7
**reasons** 10:13, 12:14, 32:2,
32:7
**recall** 5:18
**recalled** 44:8
**receive** 9:4, 17:25, 34:25,
35:24, 46:17
**received** 12:6, 36:4
**recent** 8:11
**recognize** 13:20
**recognized** 26:21, 32:14
**recommend** 38:24, 39:7
**record** 29:18, 34:21, 35:20,
35:21, 36:1, 36:10, 51:4
**recover** 28:22
**recovered** 8:14, 9:8, 22:19
**recovering** 15:12
**recovers** 22:21
**recovery** 8:19, 22:20, 37:20,
37:22, 38:13, 39:5, 39:24,
46:2, 49:13
**reduce** 30:15

reduced 28:19, 30:24, 34:13, 37:1, 45:11, 46:17
reference 48:11
reflect 18:22
regard 7:19
regarding 16:6, 30:20, 42:25
reject 14:10, 34:7, 48:4
relates 14:15
relatively 10:8
relevant 28:18, 35:8
remain 10:18
remains 44:18
remand 41:21
remanded 28:9, 38:10
remedy 7:6
remote 31:14, 31:20
remove 34:6
render 28:15
rendered 13:7, 13:15
rendering 41:17
rent 26:21
repeat 22:17
repeats 22:17
replete 29:18
reply 9:25, 33:8
represent 16:7, 27:14, 27:16
representation 12:6, 36:24
representations 27:25
represented 5:7, 37:11, 42:13
representing 12:4, 21:17, 27:20
requested 26:10
respect 22:10, 24:25, 27:19, 31:1, 37:12, 40:2, 41:2, 41:10
respond 35:14
response 42:19
responsible 48:3
rest 11:2
resting 14:4
restricted 25:10
result 31:16
resume 50:2
retained 7:23, 8:7
retainer 9:8
retaliation 14:3, 29:4, 29:14, 31:7, 31:12, 31:22, 31:24, 34:20
retention 7:12
returns 15:1, 18:22, 19:3, 19:8,

26:23
revenue 25:1, 25:8
revenues 26:19
reversal 26:7, 41:21
reverse 25:17, 36:16
reversed 29:12, 31:13
review 13:14, 13:18, 29:10, 43:19
reviewed 26:11, 32:21
reviewing 49:17
reward 27:3, 37:15
Richard 3:7
Rights 13:10, 13:14, 13:21, 28:6, 28:10, 28:11, 29:7, 29:12, 29:20, 30:3, 30:6, 30:21, 32:24, 34:4, 35:25, 36:8, 36:17, 36:19
rise 27:17
risk 14:7, 26:6, 26:7, 26:8, 42:6, 45:7, 45:8, 45:10, 45:11, 45:12, 46:11, 46:19, 47:15, 47:16, 47:20, 47:25, 48:2, 49:10, 49:11
road 23:19
roll 37:21
roughly 7:2, 11:5, 41:19
ruined 21:21
Rule 3:4
ruled 13:2
run 30:7, 30:23, 36:2, 36:8, 42:6
running 30:3
runs 30:13

< S >
salary 33:20
satisfied 18:23, 19:19
satisfy 16:22, 17:16, 43:16, 43:21
saying 36:14, 46:11, 47:19, 47:20
says 8:18, 8:23, 12:21, 20:23, 24:5, 24:6, 25:4, 33:11
scenario 8:23, 40:9, 40:10
schedule 30:11, 36:20
scheduled 48:21
SCHNEIDER 1:7, 2:8, 4:4, 4:5, 4:16, 7:13, 12:4, 16:8, 20:6, 20:8, 20:15, 20:23, 23:14, 24:2, 24:3, 49:21, 49:23,

50:3
se 4:10, 11:23, 20:19, 20:21, 21:4
Second 10:1, 13:11, 13:24, 32:19, 41:17, 43:17
Secondly 45:12
Secured 2:3, 4:10, 11:24, 11:25, 14:6, 15:23, 22:18, 32:14, 43:13
security 19:20
Seeking 3:4, 5:4, 5:16, 13:11, 17:3, 32:6, 46:7
seem 41:2
seems 41:1, 38:16, 41:1
seen 8:11
selected 36:17
self-employment 36:3
sensitive 6:20
separate 33:22
serious 7:6
seriously 43:12, 47:19
serves 27:2
Services 51:12
sets 12:18
Settle 23:1, 26:5, 49:19
settled 43:7
Settlement 3:5, 5:5, 5:19, 6:24, 7:1, 7:3, 7:18, 8:8, 8:16, 8:21, 9:9, 9:10, 9:18, 10:10, 10:14, 16:17, 17:5, 17:8, 23:6, 23:20, 25:14, 27:9, 27:17, 32:8, 32:9, 37:15, 38:25, 39:7, 40:11, 41:23, 42:10, 43:7, 43:9, 44:9, 45:1, 45:17, 46:6, 46:15, 46:21
seven 15:4, 43:18
Seventeen 21:22, 50:3
Several 13:13, 22:10, 22:16, 22:17, 26:18, 29:16
severe 31:9
sexual 29:3, 29:14, 34:20
sexually 33:1
Shall 37:20, 38:20
shoulders 48:4
shouldn't 30:7
show 26:23, 34:9
showing 33:9, 34:19, 34:20
side 5:25
significantly 7:25

simple 43:3
simply 31:9
single 9:5, 10:24, 10:25, 33:9, 33:13, 33:14, 47:9
Sir 11:15, 39:21
sites 16:4
situation 33:15, 37:10, 37:14, 37:17
six 5:15, 5:18, 6:25, 41:15
slew 28:14
slim 14:20
small 10:8, 10:20, 10:23, 10:25
smaller 11:1, 40:22
sole 14:13
someone 46:9
somewhat 44:25
sorry 19:1, 21:9, 41:8
sort 8:9
Special 4:13, 7:10, 7:16, 7:22, 17:20, 17:21, 22:11, 23:9, 23:10
specified 25:11
spend 23:5
spent 42:1
stake 43:14
stand 22:5, 36:24
standard 13:18, 24:19, 29:10, 49:8
standing 13:3, 20:13, 38:11
standpoint 37:19
start 21:17, 24:3, 38:15, 38:16
State 13:2, 14:11, 26:1, 28:6, 28:15, 32:15, 33:25, 39:10, 43:13
stated 14:1, 18:14
statement 42:25
statements 18:15, 47:2
States 1:1, 2:21, 5:10, 13:8, 44:7
status 7:12, 8:10, 27:23, 44:10
statute 16:1, 16:2
Statutory 14:19, 15:23, 33:10, 33:12, 33:14, 36:12
stayed 25:4
Stipulation 3:5
stood 22:4
strong 14:2, 32:22
structure 7:1
sub-category 24:15
subject 7:22, 9:16, 23:24

subjected 29:3
submit 18:5
submitted 39:14, 43:15, 44:1
submitting 47:12
substantial 24:2, 28:18, 37:10,
    38:2, 38:6, 38:19, 49:13
substantially 30:15, 30:24,
    32:5, 37:1
substituted 44:15
substitution 28:10
success 8:2, 12:8
successful 15:6, 32:3, 36:25,
    46:16
successfulness 14:4
suffice 48:16
sufficient 32:8, 46:20
suit 24:11
suits 24:5, 24:7, 24:18
sum 7:4, 9:8, 10:25
superimpose 7:17
support 5:3, 20:13, 27:17,
    40:23, 47:6
supported 5:21
supporting 18:7
supports 33:13
supposed 47:21, 47:22
Supreme 26:1, 43:16
surely 14:5
surplus 8:15, 37:22, 38:2,
    38:14, 38:16, 39:6, 46:17
surprised 8:5
susceptible 31:13
sustain 29:9
sustained 45:22
system 6:18


< T >
table 13:4, 18:11
tail 47:12
tax 15:1, 18:22, 19:2, 19:7,
    26:23
Technology 2:15, 3:6, 5:1,
    22:9, 25:7, 25:19, 27:17
tells 23:15, 26:18
tempo 31:22
temporary 33:23, 36:3, 36:5
ten 37:8, 37:18
tensions 6:17, 6:23
term 9:24

terminated 29:4, 30:5
termination 31:14, 31:21
terms 6:1, 9:14, 32:19, 34:12,
    37:23, 44:16, 45:9, 46:1,
    46:20, 47:4, 47:11, 47:24
test 10:14, 43:17
theories 46:17
thereafter 10:2
They've 27:24, 30:2
third 9:11, 22:19, 22:21, 22:22
thirteen 12:5
thirty-six 13:15
though 24:3, 26:4
three 15:5, 33:22, 38:11
throughout 36:7
timeliness 41:11
timely 39:9, 39:17
Today 6:9, 6:24, 8:12, 8:13,
    14:9, 17:7, 24:21, 39:14,
    44:10, 45:2
Together 7:5, 12:2
top 29:17, 30:10, 30:23
total 32:1
Transcribed 2:24
transcript 51:3
Transcription 51:12
transpired 22:12
Trial 2:20, 25:16, 26:1
tries 25:17
true 11:13, 22:18, 41:3, 51:4
Trustees 32:23, 45:13
trying 16:14, 22:25, 23:5
turn 22:5, 37:20
twelve 41:18
twenty 19:19
twenty-six 28:17
twenty-three 14:12
twice 6:24, 33:2
two 5:25, 11:1, 13:1, 15:22,
    22:23, 23:17, 25:5, 35:7,
    41:9, 41:19, 41:22, 44:23,
    45:2, 45:7, 45:20
two-fold 31:7
two-thirds 43:12
typically 7:20, 8:4


< U >
ultimate 37:14, 40:7
Ultimately 5:21, 5:24, 8:13,

26:16, 37:23, 38:1, 49:14
underlying 6:12, 27:19, 44:17
understand 9:21, 16:23, 32:18
understanding 39:12, 46:5
unemployment 36:5
unfair 49:24
unfortunate 49:3
United 1:1, 2:21, 5:10, 44:7
unless 25:4, 33:25, 34:5
unsecured 7:14, 10:8, 10:20,
    10:24, 11:5, 11:13, 15:14,
    15:20, 17:17, 17:24, 23:25,
    39:5, 42:11, 46:4
until 14:20, 15:7, 18:23, 29:16,
    29:24, 30:4, 49:14
unusual 7:16
upheld 18:13
using 40:13, 40:16


< V >
vacated 13:20, 28:19
vacating 33:1
vacuous 18:21
value 9:16, 35:6
valued 11:25, 12:1
variety 37:12
various 40:22
vehemently 35:10
versus 9:18, 26:8
viable 15:6, 32:8
view 36:10
virtually 18:6
virtue 7:12
volunteer 38:5


< W >
walks 31:5
Walter 21:20
Wantagh 2:12
wanted 11:6, 20:15, 26:5, 42:18
wants 20:10, 35:5
warrant 14:17
warrants 36:23
weakness 47:10
week 15:9
weighed 26:7
Weinberg 2:16, 4:25
WENGER 27:11, 27:15, 28:25,

35:15, 35:18, 35:20
whack 41:24
whatever 9:13, 39:16
whatsoever 31:25
whence 41:18
whereas 17:18
wherein 9:18
Whereupon 50:4
whether 6:14, 9:2, 16:16,
    18:12, 20:22, 43:17, 44:11,
    44:20, 45:4, 45:5, 45:17,
    46:15, 49:6
whom 31:15
wildly 30:2
will 7:7, 8:25, 9:1, 9:12, 9:14,
    10:9, 18:12, 18:13, 23:19,
    23:21, 23:24, 24:1, 25:25,
    26:3, 29:22, 29:23, 30:14,
    30:15, 31:23, 32:3, 32:4,
    32:5, 36:11, 38:2, 38:14,
    38:15, 38:22, 38:23, 39:14,
    39:15, 39:16, 41:15, 47:8,
    49:11
willing 47:20, 47:24, 47:25
win 14:10, 21:3, 47:8
windfalls 6:21
wins 28:21, 31:3, 31:4
wish 11:17, 20:4, 27:10, 32:11,
    44:4
within 24:15
without 25:3, 36:14
won 20:24
words 39:10
work 6:17, 9:17, 23:5, 36:6
worth 12:8, 14:23, 33:20, 42:24
written 47:13
wrongdoers 6:21


< Y >
year 8:9, 10:1, 15:4, 26:25, 37:8,
    48:17
years 5:15, 5:19, 6:25, 12:5,
    14:12, 15:5, 17:19, 18:24,
    19:2, 19:19, 21:22, 24:20,
    26:2, 26:18, 26:24, 27:22,
    28:17, 29:17, 30:5, 36:8,
    37:18, 38:9, 38:12, 38:20,
    38:21, 41:19, 46:10, 50:3
York 1:2, 1:14, 2:5, 2:17, 2:22,

15:25, 51:14
**yourself** 27:13, 34:6, 37:5
**yourselves** 4:8


**< Z >**
**zero** 34:25
**zero.** 22:20
**zeroed** 25:5