IN RE:

                                                 **MEMORANDUM &**
     LYNN CAROL SCHNEIDER,                   **ORDER**

                                                 14–CV–1166 (JMA)

                           Debtor.

---------------------------------------------------------------X

**APPEARANCES:**

Lynn Carol Schneider
10 Baker Street, Apt C
West Babylon, New York 11704
    *Pro Se Appellant*

David Blansky
Gary F. Herbst
LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue
Wantagh, New York 11793
    *Attorneys for Appellee*

**AZRACK, United States District Judge:**

    *Pro se* appellant-debtor Lynn Carol Schneider ("Debtor") appeals from a decision of the United States Bankruptcy Court (Eisenberg, J.) ("the Bankruptcy Court"), approving a $300,000 settlement ("2013 Settlement") between the appellee, Chapter 7 Trustee R. Kenneth Barnard (the "Trustee"), and the defendants in a pre-petition employment discrimination lawsuit brought by Debtor. The Bankruptcy Court approved the 2013 Settlement after previously rejecting a $150,000 settlement of the discrimination claim ("2008 Settlement"). For the reasons set forth below, the Bankruptcy Court's Order approving the 2013 Settlement is affirmed.

## I. BACKGROUND

The following background is derived from the parties' briefs and the bankruptcy record designated on appeal. Familiarity with the record and parties' arguments is assumed.

**A. The Debtor's Pre-Petition Discrimination Lawsuit and Bankruptcy Case**

In March 1997, Debtor filed a discrimination complaint with the New York State Division of Human Rights (the "Division") charging Long Island Forum for Technology ("LIFT"), Richard Cordani, (collectively, "LIFT defendants") and another defendant with sexual harassment and retaliation (hereinafter the "Discrimination Claim"). (Mar. 2007, Alt. Proposed Order ("Mar. 2007 Order") at 1, Mason's 2008 Objections, Ex. 1, ECF No. 1-5.) In July 2000, Debtor retained attorney Elizabeth Mason to represent her in the litigation on a contingency basis. (Retainer, Mason's 2008 Objections, Ex. 6, ECF No. 1-5.)

In September 2004, during the pendency of the Discrimination Claim, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. (Appellee's Br. at 4, ECF No. 11). Although Debtor was required to disclose any assets and liabilities that she held at that time, she failed to disclose the Discrimination Claim in her petition and during the Section 341 meeting of the creditors. (See generally Voluntary Pet., ECF No. 1-1; Appellee's Br. at 4.) Due to those omissions, the Trustee recommended a no-asset discharge. (2008 Mot. to Compromise at 5, ECF No. 1-4.) In January 2005, the Bankruptcy Court granted the discharge and closed the case. (Id.)

In January 2006, a hearing on the Discrimination Claim was held before Administrative Law Judge Robert M. Vespoli (the "ALJ"). (See Mar. 2007 Order.) The ALJ issued a recommended order finding that LIFT had retaliated against Debtor but had not subjected her to a sexually-harassing hostile work environment. (May 2008 Wenger Affirm. ¶ 8, ECF No. 1-

12).[1] In March 2007, the Division's Adjudication Counsel issued an Alternative Proposed Order (hereinafter the "March 2007 Order"). Unlike the recommended order, the March 2007 Order sustained both the sexual harassment and retaliation claims. (Mar. 2007 Order at 25.) In April 2007, the Division adopted the March 2007 Order with some corrections and awarded Debtor approximately $500,000 in damages (hereinafter the "2007 Determination").[2] (See generally In the Matter of Long Island Forum for Tech., v. NYS Div. of Human Rights, 925 N.Y.S.2d 535 (2d Dep't App. Div. 2001), Mason Pre-2013 Hr'g Objections, Ex. D, ECF No. 1-25). LIFT defendants appealed that determination.

In November 2007, the Trustee learned of the 2007 Determination and successfully moved to reopen Debtor's bankruptcy case to administer the Discrimination Claim. (See Order Reopening Debtor's Chapt. 7, ECF No. 1-3.) In 2008, the bankruptcy case was reassigned to Judge Dorothy Eisenberg, who presided over the case until March 2014. (See Bankr. Dkt, ECF No. 1-34.)

**B. 2008 Settlement**

After the Trustee identified several potential weaknesses with the Discrimination Claim, the Trustee agreed to settle with LIFT defendants for $150,000 and sought court approval pursuant to Bankruptcy Rule 9019. (See 2008 Mot. to Compromise.) In June 2008, after additional briefing was submitted at the Bankruptcy Court's request, the Court heard argument on the Trustee's motion. (2008 Mason Mem. at 1, ECF No. 1-17; June 2008 Settlement Hr'g ("2008 Hr'g"), at 2, ECF No. 1-23.) LIFT defendants supported the motion and pointed out that

---

[1] Although the ALJ's recommended order was not provided to the Court, the order does not seem to be in dispute.

[2] The April 2007 decision was not provided to the Court. However, any discrepancy between the April 2007 decision and the March 2007 Order, which was provided, does not appear to be material to the resolution of the issues in the instant appeal.

3

the Division's 2007 Determination was not "well-reasoned" as demonstrated by the differences between the ALJ's recommended order and the March 2007 Order. (See supra at 2–3.) Debtor, Mason, and Alfred Dimino from the Office of the United States Trustee ("UST Dimino") opposed the settlement.[3]

The Bankruptcy Court denied the Trustee's motion. (2008 Hr'g at 36–39.) The Court found: (1) that there was "no reasoned determination" as to why a $150,000 settlement would be reasonable; (2) the Debtor's interests were not accounted for; and (3) the risk of an appeal was "worth taking." (Id. at 37–39.)

Following the hearing, the Trustee retained Mason as special counsel to oppose the 2007 Determination appeal. (Order on Appl. to Employ, ECF No. 1-22.) In April 2012, the Division issued a final order confirming the $500,000 damage award against LIFT defendants. (Appellee Br. at 5.) LIFT defendants appealed that determination.

**C. 2013 Settlement**

In 2013, the Trustee and LIFT defendants agreed on a revised $300,000 settlement. (2013 Mot. for Compromise, ECF No. 1-24.) In November 2013, the Trustee sought court approval of the settlement. (Id.) At that time, the unsecured creditors' claims totaled approximately $40,000. (2013 Hr'g at 11.) Neither the unsecured creditors nor the Division objected to the settlement. (Appellant Br. at 8–9.)

In December 2013, the Bankruptcy Court heard argument on the Trustee's motion. (2013 Hr'g at 2.) The Trustee asserted, among other things, that the new agreement took into account the benefit to Debtor and the likelihood of success on the merits of the Discrimination Claim

---

[3] In objecting to the 2008 Settlement, Mason argued that the amount of her lien had to be calculated based on the amount the 2007 Determination amount, including any interest that had accrued, rather than on the amount of the Trustee's settlement. (2008 Hr'g at 7–10.) Mason would also raise the same argument in objecting to the 2013 Settlement. (Dec. 10, 2013 Settlement Hr'g ("2013 Hr'g") at 11–14, ECF. No. 16.) The Bankruptcy Court rejected that argument on both occasions. (See 2008 Hr'g at 7; 2013 Hr'g at 16.)

4

appeal. (Id. at 8.) According to the Trustee, it was only after "substantial negotiations" with LIFT defendants that the parties reached what the Trustee characterized as "a very reasonable number under the circumstances and in the face of this litigation." (Id. at 38.) Further, the Trustee calculated that it might be two years until the Discrimination Claim appeal would be decided. (Id. at 41.)

LIFT defendants argued in support of the Trustee's motion noting that they, as a non-profit, had minimal assets and their revenue either comes from donations or restrictive grants from the government.[4] (Id. at 21–25.) They also provided the Trustee with their financial statements, which the Trustee reviewed with his counsel. (Id. at 26; see 2013 Mot. to Compromise ¶ 16.)

Mason and Debtor argued that the 2013 Settlement should not be approved. They asserted that the value of the 2007 Determination had increased to $700,000 because of the accruing interest and that a $300,000 settlement was insufficient to satisfy all interested parties. (2013 Hr'g at 11–12, 20.) Further, Mason asserted LIFT defendants' income tax forms showed LIFT defendants' ability to pay the judgment. (Id. at 15; see also LIFT's Return of Org. Exempt Income Tax, Mason Pre-2013 Hr'g Objections, Ex. L, ECF No. 1-25.)

UST Dimino supported the settlement. In his view, the risk of appeal and the potential collectability issues given LIFT defendants' finances were sufficient to get the Trustee "over the hurdle in terms of business judgment [] in accepting the settlement." (2013 Hr'g at 46.)

The Bankruptcy Court approved the 2013 Settlement. At the hearing, Judge Eisenberg inquired into the amount that may be recovered on appeal, the merits of the Discrimination

---

[4] According to the unrebutted representations of LIFT defendants, the government grants are restricted to specific purposes approved by the government. (Id. at 25.) LIFT defendants also represented that they only had $75,000 in their bank account. (Id.)

Claim, and LIFT defendants' tax forms. (See, e.g., id. at 18–19, 33–34, 39–41.) Judge Eisenberg also rejected Mason's arguments regarding her contingency fees, finding that Mason's lien is limited to one-third of the total settlement. (Id. at 16.) At the conclusion of the hearing, Judge Eisenberg identified the standard to decide whether to approve a settlement as the "lowest level of reasonableness in the compromise" and then explained her rationale for approval:

> I believe that there is an inherent risk in the appeal. There is a risk that there will be very little to compensate the Trustee in this case on behalf of the Debtor. There is substantial delay ahead which diminishes any recovery to anyone until it is ultimately decided. There is no evidence that it is fully collectible if it were to be obtained.
>
> And most important I have to give credit to the Trustee's business judgment after reviewing all the issues placed before him and therefore I must determine that the Trustee's motion to be granted.

(Id. at 49.) On December 26, 2013, Judge Eisenberg issued a written order approving the 2013 Settlement. Debtor now appeals that decision.

## II.    DISCUSSION

**A. Standard of Review**

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court. A district court reviews a bankruptcy court's findings of fact for clear error and reviews its legal conclusions *de novo*. In re Bennett Funding Grp., Inc., 146 F.3d 136, 138 (2d Cir. 1998); see Fed. R. Bankr. P. 8013. A reviewing court will not overturn a bankruptcy court's decision to approve a settlement "unless it is manifestly erroneous and a clear abuse of discretion." Matter of 47–49 Charles Street, Inc., 209 B.R. 618, 620 (S.D.N.Y. 1997); see In re Refco Inc., 505 F.3d 109, 116 (2d Cir. 2007). "A bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings." In re Blaise, 219 B.R. 946, 950 (2d Cir. 1998). A

6

bankruptcy court's decision to approve a settlement is reviewed extremely deferentially. In re Cousins, No. 09–CV–1190, 2010 WL 5298172, at *3 (S.D.N.Y. Dec. 22, 2010).

Courts are obliged to liberally construe submissions of a *pro se* litigant and to interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted).[5]

Debtor argues that the Bankruptcy Court abused its discretion in approving the 2013 Settlement. The Trustee disagrees, and contends that Debtor waived certain arguments. The Trustee's waiver argument will be addressed first.

**B. Waiver**

The Trustee asserts that two of Debtor's arguments—that the Bankruptcy Court failed to hold a proper hearing and that the Trustee's proposed settlement figure lacked support—are waived because Debtor failed to raise them in the Designation of Record and Issues on Appeal as required by Rule 8006 of the Federal Rules of Bankruptcy Procedure.

Although Debtor did not designate these issues pursuant to Rule 8006, Debtor did brief these issues. Given Debtor's *pro se* status, the Court will consider those issues. See Burgos v. Pergament, No. 11–CV–5257, 2012 WL 3929953, at *5 (E.D.N.Y. Sept. 10, 2012) (reaching the merits of *pro se* appellant's waived issues out of an abundance of caution).

---

[5] The Trustee contends that Mason assisted Debtor with drafting Debtor's briefs in the instant appeal, and, thus, Debtor is not entitled to the special solicitude afforded to *pro se* litigants. Although Debtor's papers appear to have been drafted with the assistance of counsel, out of an abundance of caution, the Court will treat Debtor as a *pro se* litigant. Cf. In re Osborne, No. 13–CV–8211, 2014 WL 2738558, at *2 n.5 (S.D.N.Y. June 17, 2014) (treating a former attorney as a *pro se* litigant out of an abundance of caution, even though a former attorney is not entitled to the considerations typically accorded to a *pro se* litigant.)

7

## C. Bankruptcy Court's Approval of the 2013 Settlement

### 1. Standard for Bankruptcy Court Approval of a Settlement Pursuant to Rule 9019

The Bankruptcy Court's authority to approve a settlement agreement is found in Bankruptcy Rule 9019. Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. P. 9019(a)(1). When presented with the question of whether to approve a proposed settlement, the Bankruptcy Court must make an "informed and independent judgment as to whether a proposed compromise is fair and equitable" after apprising itself of "all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); see also In re Telcar Group, Inc., 363 B.R. 345, 352 (Bankr. E.D.N.Y. 2007).

"In undertaking an examination of the settlement . . . th[e] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement falls below the *lowest point in the range of reasonableness*." In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983) (internal quotation marks and citation omitted) (emphasis added); In re Hilsen, 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009).

To evaluate if a settlement is fair and equitable under Rule 9019 courts in the Second Circuit look to the following factors:

(1) The balance between the litigation's possibility of success and the settlement's future benefits;

(2) The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

(3) The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

(4) Whether other parties in interest support the settlement;

(5) The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;

(6) The nature and breadth of releases to be obtained by officers and directors; and

(7) The extent to which the settlement is the product of arm's length bargaining.

In re Iridium Operating LLC, 478 F.3d 452, 462 (2d Cir. 2007). The court may give weight to the opinions of the Trustee, the parties, and their attorneys, that the relevant factors have been considered and that the settlement is fair and reasonable. In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496–97 (Bankr. S.D.N.Y. 1991). A court may approve a settlement even if it believes that the Trustee ultimately would be successful in the litigation. In re Teltronics Services, Inc., 46 B.R. 426, 428 (E.D.N.Y. 1984), aff'd, 762 F.2d 185 (2d Cir. 1985).

However, a bankruptcy court must still make an independent determination when approving a settlement. In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993). A bankruptcy judge cannot "accept the trustee's word that the settlement is reasonable, nor may [the judge] merely 'rubber stamp' a trustee's proposal." Id. at 426 (citing In re Energy Co-op., Inc., 886 F.2d 921, 924 (7th Cir. 1989)). The bankruptcy judge is ultimately responsible for an unbiased and informed assessment of a settlement's terms. See TMT Trailer, 390 U.S. at 424; Plummer v. Chemical Bank, 668 F.2d 654, 659 (2d Cir. 1982). However, a court should not conduct a "mini-trial" on the merits. In re Smart World Tech., 423 F.3d 166, 177 (2d Cir. 2005); In re Purofied Down Products, 150 B.R. 519, 522 (S.D.N.Y. 1993).

As noted earlier, on appeal, a bankruptcy court's decision to approve a settlement is reviewed extremely deferentially. In re Cousins, 2010 WL 5298172, at *3.

2. **Analysis**

Debtor contends that the 2013 Settlement should be vacated because the Bankruptcy Court abused its discretion by: (1) failing to apply the proper legal standard in rendering its decision; (2) failing to explain its analysis;[6] (3) approving a settlement that lacked support in the record; (4) failing to address the objections raised by Mason and Debtor; and (5) failing to hold an evidentiary hearing. As explained below, the Bankruptcy Court did not abuse its discretion in approving the 2013 Settlement.

The Bankruptcy Court properly applied the appropriate governing legal standard. First, the Court correctly identified the "lowest level of reasonableness" as the standard in approving a settlement pursuant to Bankruptcy Rule 9019. (2013 Hr'g at 49.) Second, it also properly evaluated if the settlement was fair and equitable by considering the relevant factors. See In re Iridium Operating, 478 F.3d at 452. Specifically, the Court focused on: (1) the inherent risk of the appeal and diminished recovery versus the benefits of settlement; (2) the collectability of the judgment; and (3) the delay of litigation. (2013 Hr'g at 49.) In applying the relevant factors, the Bankruptcy Court did not abuse its discretion.

In 2008, Judge Eisenberg rejected a $150,000 settlement offer because the record did not sufficiently show why a $150,000 settlement would be reasonable and because Debtor's recovery would be extremely limited or nonexistent. (2008 Hr'g at 38–39.) Five years later, the Discrimination Claim was still in dispute and the settlement amount was considerably more

---

[6] Although Debtor labels her objection as "the Bankruptcy Court failed to set forth its Findings of Fact and Conclusions of Law," it appears, from the substance of her argument, she is actually asserting that the Bankruptcy Court did not sufficiently demonstrate its independent judgment. (See Appellant Br. at 13.)

favorable than in 2008.  The circumstances and settlement changed such that Judge Eisenberg was now willing to approve the 2013 Settlement.  The record indicates that in considering the 2013 Settlement, Judge Eisenberg found that the risk inherent in the appeal, approximately sixteen years after the initiation of the Discrimination Claim, was enough to justify the 2013 Settlement, whereas in the 2008 Settlement it was not.  Additionally, the difference in determinations within the Division itself on the merits of the case may present a valid concern on appeal.  (May 2008 Wenger Affirm. at 3–4.)  Notably, UST Dimino, who opposed the 2008 Settlement, did not oppose the 2013 Settlement, citing the risk of appeal as a concern.

In terms of collectability, Mason presented the Court with LIFT defendant's income tax forms.  The Court disagreed with Mason's assertion that the tax forms showed that LIFT defendants had the ability to pay the judgment.  Instead, Judge Eisenberg determined that the tax forms showed that LIFT defendants did not have much revenue after expenses were deducted, making collectability an issue. (2013 Hr'g at 18–19.)  The Court's conclusion was supported by the representations made by the Trustee and LIFT defendants that the Trustee had reviewed LIFT defendants' finances during their "substantial negotiations."  (Id. at 38.)  It should be noted that the Trustee engaged in these negotiations with the assistance of his counsel who like Mason, had over twenty years of experience in employment law.  (Id. at 28.)  Although Mason, a creditor, and Debtor both objected to the settlement, their opposition is but one factor of many that Judge Eisenberg had to weigh in approving the settlement.

Judge Eisenberg, an experienced bankruptcy judge who presided over this case from 2008 to 2014, had particularized knowledge of the facts of the bankruptcy proceeding and the issues presented in the Discrimination Claim appeal.  Cf. In re Ionosphere Clubs, Inc., 156 B.R. at 431 (considering, in approving settlement, the bankruptcy judge's experience).  Her rejection

11

of the 2008 Settlement confirms that she did not merely "rubber stamp" the Trustee's decisions. See Alford v. Dribusch, No. 14–CV–558, 2014 WL 7243321, at *8 (N.D.N.Y. Dec. 19, 2014) (affirming the bankruptcy court's approval of the settlement and stating that "[t]here was ample material in the existing record—especially when combined with the Judge's particularized knowledge of the facts of the bankruptcy proceeding and his prior refusal to approve the Trustee's less valuable settlement proposal . . . .").

Debtor, relying on In Re American Reserve Corp, 941 F.2d 159 (7th Cir. 1987), argues that the Bankruptcy Court did not issue proper findings. There, the Seventh Circuit reversed the approval of a settlement and remanded the case back to the bankruptcy court because the bankruptcy court appeared not to have conducted its own evaluation of the relevant factors and did not explain why it credited the trustee's opinion. Here, however, the record satisfies this Court that Judge Eisenberg independently examined the appropriate factors and made an informed and independent decision concerning the appropriateness of the settlement.

In approving or denying the settlement a bankruptcy court does not have to decide "numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." In re W.T. Grant Co., 699 F.2d at 608. The Bankruptcy Court did not abuse its discretion in approving the 2013 Settlement.

Debtor raises two other related challenges to the Court's decision. Both are meritless. First, Debtor asserts that the Bankruptcy Court failed to address the objections raised by Debtor and Mason. To the contrary, the Bankruptcy Court entertained objections from Mason and Debtor in both the 2008 and 2013 hearings. Their objections concerned: (1) Mason's contingency fee; (2) the surplus that may or may not be left for the Debtor; and (3) the potential

success of the Discrimination Claim. The Court addressed Mason's contingency fee at both the 2008 and 2013 hearings. Further, consistent with In Re Spielfogel, 211 B.R. 133 (Bankr. E.D.N.Y. 1997) (Eisenberg, J.), the Court expressed concern about Debtor in declining to approve the 2008 settlement on the basis that Debtor would not benefit from the settlement. As to the success of the Discrimination Claim, as explained above, the Bankruptcy Court properly weighed the relevant factors and considered the appeal.

Second, contrary to Debtor's argument, the Bankruptcy Court did not abuse its discretion in not holding an evidentiary hearing. There is no legal requirement that a bankruptcy court hold an evidentiary hearing before approving a settlement; nor is it necessary for the bankruptcy court to conduct a "mini trial" on the issues. Alford, 2014 WL 7243321, at *3. Moreover, Debtor never demanded an evidentiary hearing when she challenged the settlement before the Bankruptcy Court. See In re SageCrest II, LLC, No. 10–CV–978, 2011 WL 134893, at *10 (D. Conn. Jan. 14, 2011).

### III. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's order approving the 2013 Settlement is hereby AFFIRMED. The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: March 26, 2015
      Central Islip, New York

                                            /s/ (JMA)
                                            JOAN M. AZRACK
                                            UNITED STATES DISTRICT JUDGE